In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-3588

IN RE:

KNIGHT-CELOTEX, LLC *et al.*,

*Debtors*.

APPEAL OF:

JAMES A. KNIGHT

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:11-cv-01815—**Samuel Der-Yeghiayan**, *Judge.*

ARGUED MAY 24, 2012—DECIDED SEPTEMBER 5, 2012

Before CUDAHY, KANNE, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Using a judicial estoppel theory, debtor-appellant James Knight attempts to turn a harmless and seemingly inadvertent failure to disclose an adverse interest in a bankruptcy proceeding into a potential multimillion dollar windfall. He appeals from an order in the jointly administered bankruptcy cases of Knight-Celotex, LLC and Knight Industries I, LLC

(collectively, the "Companies"). That order permitted the Companies' chapter 7 bankruptcy trustee to assign to Bank of America certain causes of action that the Companies' estate held against Knight as an individual. At the time of the assignment, the same trustee, Barry Chatz, was also serving as the chapter 7 trustee in Knight's own bankruptcy case, and the law firm of Freeborn & Peters LLP represented trustee Chatz in his administration of both the Companies' bankruptcy estate and Knight's individual estate.

Chatz and Freeborn & Peters failed to disclose — in Chatz's application to retain Freeborn & Peters in Knight's individual bankruptcy — that Chatz, as the Companies' trustee, intended to continue to pursue claims held by the Companies against Knight. Knight contends that this failure should be deemed the trustee's abandonment of those claims. On this theory, he argues that the bankruptcy court abused its discretion when it refused to invoke the doctrine of judicial estoppel to prevent the later assignment of those claims to the Bank. The district court affirmed the bankruptcy court's rejection of Knight's judicial estoppel theory, and we do the same, finding no abuse of the bankruptcy court's discretion.

First, we review the factual background of the case and the interplay of the various bankruptcy proceedings. We then dispose of the threshold question whether Knight had standing to object to the assignment of the claims against him to the Bank. Finally, we reach the merits of Knight's appeal. We detail the judicial

estoppel trap Knight tried to set for the trustee, and we explain why the bankruptcy court's refusal to spring the trap was a proper exercise of its discretion. Although we do not condone Chatz's and Freeborn & Peters's failure to disclose Chatz's intent, as the Companies' bankruptcy trustee, to pursue (or assign) the claims against Knight, that failure did not harm Knight, and other remedies are available. It would be inequitable and an improper use of judicial estoppel — an equitable remedy — to permit Knight to reap a huge benefit from an otherwise harmless omission.

I. *Factual and Procedural Background*

*Knight Companies' Bankruptcy*. Knight, the individual debtor, was the principal owner and CEO of Knight Industries I, LLC. Knight Industries was a holding company that owned equity interest in Knight-Celotex LLC and other entities. Bank of America had provided secured credit of more than $34 million to Knight Industries I and Knight-Celotex. On April 6, 2009, Knight Industries and Knight-Celotex filed voluntary petitions for relief under chapter 11 of the bankruptcy code. The Companies' bankruptcy petition was converted to a chapter 7 petition two months later, and Chatz was appointed as chapter 7 trustee of the Companies' estates. The bankruptcy court authorized trustee Chatz to retain the law firm of Freeborn & Peters as counsel.

In December 2009, Chatz and the Bank each sent similar letters to Knight. They alleged that Knight had made

fraudulent and/or preferential transfers of the Companies' assets, had breached the duty of good faith and fair dealing, had breached duties Knight owed to creditors, had misappropriated corporate opportunities, had committed conversion, and had violated state and/or federal securities laws, among other claimed acts and omissions. The letters named several potential legal claims against Knight, including claims for director and officer liability — for ease of reference, we refer to all the allegations against Knight as the "D&O claims"— and demanded payment from Knight of at least $27 million (to the Companies) and $34 million (to the Bank).

*Knight's Personal Bankruptcy*. On February 23, 2010, Knight filed his own voluntary petition for chapter 7 bankruptcy. Knight listed in his schedule of assets and liabilities the Companies' D&O claims, disclosing their potential value as "unknown." Knight originally filed his bankruptcy petition in New Hampshire, but it was transferred to the Northern District of Illinois and to the judge presiding over the Companies' petition. In granting transfer, the bankruptcy court noted the existence of the D&O claims. See *In re Knight-Celotex, LLC*, 427 B.R. 697, 701 (Bankr. N.D. Ill. 2010). Chatz was appointed to serve as the chapter 7 trustee of Knight's estate.

*Retention Application in Knight's Bankruptcy*. On May 19, 2010, trustee Chatz asked the bankruptcy court to allow him to retain Freeborn & Peters as his counsel in Knight's individual bankruptcy, as well. In the retention application, Chatz said that Freeborn & Peters "does not have

any connection with [Knight], his creditors, or other parties-in-interest or their respective attorneys . . . and is a 'disinterested person'" as that term is defined in the bankruptcy code.[1] In support of the application, Chatz submitted the "Declaration of Richard S. Lauter in Accordance with Section 327 of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure." In the declaration, attorney Lauter explicitly stated that Freeborn & Peters served as bankruptcy counsel to Chatz in the Companies' bankruptcy. Lauter also asserted that "to the best of my knowledge, I have determined that F&P does not currently represent any entity, or hold interests adverse to any entity, in matters related to [Knight's] chapter 7 case."

At a hearing on the retention application on May 25, 2010, the court asked if anyone objected to Chatz's retention of Freeborn & Peters as counsel in the Knight bankruptcy. Knight's counsel replied:

> There's no objection, Your Honor. I just . . . was curious. I didn't see in here where counsel indicated he represented Mr. Chatz as to his capacity as corpo-

---

[1] The bankruptcy code defines "disinterested person" as a person that: "(A) is not a creditor, an equity security holder, or an insider; (B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and (C) does not have an interest materially adverse to the interest of the estate or of any class of creditors of equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason." 11 U.S.C. § 101(14).

rate trustee. But since we all know that's the case, I mean, I don't think that's a problem that it was omitted.

. . .

As long as they're still disinterested, we're fine, Your Honor.[2]

In response, Lauter volunteered to submit a supplemental declaration, which he did the next day. Lauter reaffirmed that Freeborn & Peters served as counsel to Chatz in the Companies' bankruptcy and also reaffirmed that:

Based on the foregoing and the declaration previously submitted in support of the [Retention] Application, upon reasonable inquiry and to the best of my knowledge, I have determined that F&P does not currently represent any entity or hold any interests, adverse to the estate, and is a "disinterested person" pursuant to 11 U.S.C. § 101(14).

Without further objection, the bankruptcy court entered an order authorizing Chatz to retain Freeborn & Peters as counsel in the Knight bankruptcy, finding that the firm was a "disinterested person" as defined in the bankruptcy code. Knight's trap was set.

*Assignment of Knight Companies' Claims to Bank.* More than five months later, on November 3, 2010, the Bank

---

[2] Knight's counsel was mistaken; as noted, the Lauter Declaration did disclose the fact that Freeborn & Peters represented Chatz as Trustee of the Companies.

and Chatz jointly asked the court to allow Chatz to assign the Companies' D&O claims to the Bank. These were the same claims that Chatz and the Bank had asserted against Knight in the December 2009 letters that had preceded Knight's personal bankruptcy. In a separate filing, the Bank asserted that it would seek recovery only against Knight's liability insurance policy and not against Knight himself.

Knight objected. He contended that Chatz should be judicially estopped from asserting that the Companies had any claims against him that could be assigned to the Bank. He based his contention on the following logic, trying to spring the trap he set when he did not object to the trustee's retention of Freeborn & Peters: First, Freeborn & Peters had asserted in its retention application that it was a "disinterested person" in Knight's individual bankruptcy proceeding even though the firm also represented Chatz in his role as trustee for the Companies. Second, the bankruptcy court had approved the retention application, signaling that the court believed or assumed that Chatz, as the Companies' trustee, held no interests adverse to Knight. According to Knight's theory, this position, assumed by the court, directly conflicted with the premise of the later-filed assignment motion, specifically that the Companies had viable claims against Knight that their trustee could pursue or assign to the Bank. Third, since the bankruptcy court had approved the firm's retention application and thus implicitly had concluded that the trustee and Freeborn & Peters had no interests adverse to Knight, they

should be judicially estopped from taking any further action to pursue or assign those claims against Knight.

The bankruptcy court overruled Knight's objection, finding that the assignment was a proper exercise of the trustee's business judgment.[3] The court rejected Knight's judicial estoppel theory, reasoning that application of the doctrine is discretionary, and that in this instance, Freeborn & Peters's statements should not prevent the Companies' creditors from pursuing otherwise legitimate claims against the Knight estate. If the law firm acted improperly, the bankruptcy court reasoned, other remedies were available that would not impose such a hardship on the estate's creditors.

On appeal, the district court affirmed. See *Knight v. Bank of America, N.A.*, 2011 WL 5008528, at *2-4 (N.D. Ill. Oct. 18, 2011). Even if the bankruptcy court had not explicitly addressed all the judicial estoppel factors identified in *New Hampshire v. Maine*, 532 U.S. 742 (2001), nothing required the court to do so. The hearing transcript satisfied the district court that the bankruptcy

---

[3] Once the automatic stay was lifted, the Bank sued Knight and several co-defendants based in part on the D&O claims. On June 20, 2012, the district court dismissed with prejudice the Bank's second amended complaint in that action. *Bank of America, N.A. v. Knight*, 2012 WL 2368458 (N.D. Ill. June 20, 2012). The Bank has appealed the dismissal, which is pending as No. 12-2698. The ultimate outcome of those proceedings might render this case academic, but we think the better course is to resolve the separate appeals as they have arisen rather than to postpone a decision in this one.

court had considered the equities in weighing whether to apply the doctrine of judicial estoppel. Knight appeals that decision of the district court. We have jurisdiction under 28 U.S.C. § 158(d)(1).

## II. *Knight's Standing to Object*

Before proceeding to the merits, we must address a threshold issue: Knight's standing. The trustee and the Bank point out that the Bank would seek recovery on the D&O claims only from Knight's insurer and not from Knight personally. They argue, therefore, that the D&O claims were not actually adverse to Knight's estate. Accordingly, they contend that Knight may lack standing to object to the assignment of the claims. In response, Knight points out that the insurance policy would not necessarily cover all of his potential liability on the D&O claims for two reasons. The policy is a "wasting" policy with a limit of $5 million on combined defense and indemnification costs, and the policy excludes coverage for intentional fraudulent acts, which have been alleged as part of the D&O claims.

Bankruptcy standing is narrower than constitutional standing and requires that a person "have a pecuniary interest in the outcome of the bankruptcy proceedings." *Cult Awareness Network, Inc. v. Martino*, 151 F.3d 605, 607 (7th Cir. 1998). The prospect that the D&O claims might not be entirely discharged, at least to the extent they are based on fraud, is sufficient to give Knight standing here. See, *e.g.*, 11 U.S.C. §§ 523(a)(2), (4), (19) (exceptions to

discharge in bankruptcy). He faced the prospect of personal liability on some of the claims.

We also reject the basic premise on which the standing argument is based, specifically, that the D&O claims were not "adverse" to Knight because they could be ultimately covered by liability insurance. The cases on which the trustee and the Bank rely for this point are inapposite. We stated in *IBM v. Fernstrom Storage and Van Co.*, that permitting a creditor to seek recovery from a debtor's insurers "will neither deplete the debtor's assets or otherwise interfere with the administration of the bankruptcy proceeding, nor hinder the debtor's fresh start at the close of the proceeding." 938 F.2d 731, 734 (7th Cir. 1991) (creditors who did not file proofs of claim in a debtor's bankruptcy case were free to pursue claims against debtor's insurers). And, in *In re Shondel*, 950 F.2d 1301, 1304, 1307 (7th Cir. 1991), we held that a plaintiff could proceed with a wrongful death action against a debtor after discharge, in spite of the debtor's interest in a "fresh start," because any recovery would come from the debtor's automobile liability insurance. See also *Hendrix v. Page*, 986 F.2d 195, 197 (7th Cir. 1993) (collecting cases and noting that courts are nearly unanimous in holding that a post-discharge injunction does not extend to suits in which relief is sought only against debtor's insurer; such suits do not create a "personal liability of the debtor") (internal citations omitted). But here, there was a strong possibility that at least some of the D&O claims would not be discharged in Knight's personal bankruptcy. Accordingly, these precedents do not support the contention that the D&O claims

were not adverse to Knight. Nor do they excuse the failure to identify the D&O claims, asserted by trustee Chatz, represented by Freeborn & Peters, as claims adverse to Knight at every appropriate turn.

For these reasons, the fact that the Bank intended to seek payment under Knight's liability insurance should not have been considered by the bankruptcy court or the district court in assessing the effect of the omission of the D&O claims from the trustee's disclosures in the retention motion. However, both courts considered the impact of Knight's liability insurance only in the alternative. See *Knight*, 2011 WL 5008528, at *5; Supp. Appx. 5 (bankruptcy court describing insurance coverage as a "minor twist" that might or might not make a difference). Accordingly, any error in doing so was harmless. With standing secure, and without considering Knight's insurance coverage, we turn to the merits of his appeal and the issue of judicial estoppel.

III. *Judicial Estoppel*

Judicial estoppel is a matter of equitable judgment and discretion, and we review the bankruptcy court's decision for an abuse of that discretion. See *Wiese v. Community Bank of Central Wisconsin*, 552 F.3d 584, 588 (7th Cir. 2009); *Commonwealth Ins. Co. v. Titan Tire Corp.*, 398 F.3d 879, 887 (7th Cir. 2004). "[A] court abuses its discretion when its decision is premised on an incorrect legal principle or a clearly erroneous factual finding, or when the record contains no evidence on which the court rationally could have relied." *Corporate Assets, Inc. v.*

*Paloian*, 368 F.3d 761, 767 (7th Cir. 2004). We find that the bankruptcy court properly exercised its discretion in rejecting Knight's theory and in refusing to invoke the doctrine of judicial estoppel to preclude assignment of the D&O claims against Knight to the Bank.

In *New Hampshire v. Maine*, 532 U.S. 742 (2001), the Supreme Court observed that the standard for invoking judicial estoppel is "not reducible to any general formulation of principle," but recognized three factors that "typically inform the decision whether to apply the doctrine in a particular case." *Id*. at 750 (internal quotation omitted). Those factors are first, that "a party's later position must be clearly inconsistent with its earlier position;" second, that "the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled;" and third, that "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id*. at 750-51 (internal quotations omitted).

We reject Knight's argument that the bankruptcy court's failure to march through the *New Hampshire v. Maine* factors one by one was error in itself. These factors are not a rigid test that must be applied every time the issue of judicial estoppel is raised, but rather are general guideposts that must be considered in the context of all the relevant equities in any given case. See *Bisek v. Soo Line R.R. Co.*, 440 F.3d 410, 413 (7th Cir. 2006)

(refusing to invoke judicial estoppel, without explicitly relying on *New Hampshire v. Maine* factors, where doctrine would render an inequitable result by "land[ing] another blow" on bankrupt's creditors, who were victims of his bankruptcy fraud).

Returning to the *New Hampshire v. Maine* factors, Knight attempts to show that the trustee took "clearly inconsistent" positions in the retention application and the assignment motion. Specifically, he argues that Chatz's application to retain Freeborn & Peters violated 11 U.S.C. § 327(a) and Federal Rule of Bankruptcy Procedure 2014(a). Section 327(a) permits the trustee to retain attorneys "that do not hold or represent an interest adverse to the estate, and that are disinterested persons." See, *e.g.*, *Kravit, Gass & Weber, S.C. v. Michel (In re Crivello)*, 134 F.3d 831, 835-36 (7th Cir. 1998) (defining the phrase "hold or represent an interest adverse to the estate") (collecting cases). Rule 2014(a) facilitates enforcement of section 327(a) by requiring that professionals seeking to represent the trustee in a bankruptcy proceeding submit a verification that fully and broadly discloses "the person's connections with the debtor, creditors, [or] any other party in interest," among others. See Fed. R. Bankr. P. 2014(a); *In re Gluth Brothers Construction, Inc.*, 459 B.R. 351, 364 (Bankr. N.D. Ill. 2011) (describing "connections" that must be disclosed pursuant to Rule 2014(a) as "considerably broader" than the disclosures required for section 327(a)). For purposes of Knight's appeal, though, his arguments on the merits of those rules and the precedents applying them are beside the point.

If any violations of either section 327(a) or Rule 2014(a) occurred, they occurred with the Freeborn & Peters retention application. The order granting that application was entered in May 2010. Pursuant to Bankruptcy Rule 8002(a), Knight had fourteen days to file any appeal from that order, and that deadline has long since passed. See Fed. R. Bankr. P. 8002(a). Knight insists that he has not appealed the bankruptcy court's grant of the Freeborn & Peters retention application, only its grant of the assignment order. But, having appealed only the assignment order, any issues relating to the disclosures made or not made during the retention application process are only tangential. The question before us is whether the bankruptcy court abused its discretion in refusing to find the trustee judicially estopped from pursuing the D&O claims, not, as Knight contends, whether the disclosure rules were actually violated.

Knight argues that by asserting in the retention application that Freeborn & Peters was a "disinterested person," Chatz effectively disavowed the existence of the D&O claims against Knight, and that it was then "clearly inconsistent" to seek later to assign those abandoned D&O claims to the Bank. He claims that these "clearly inconsistent" positions support his desired remedy: the imposition of judicial estoppel to bar any pursuit of the D&O claims. It is true that Freeborn & Peters and Chatz failed to disclose explicitly the continued existence of the D&O claims in the representation application — a regrettable lapse, for the omission has resulted in this unnecessary litigation. But, it is also true that Chatz never explicitly disavowed the D&O

claims or expressed any intent to abandon them at any time before, during, or after the retention application.

The court, Knight, and all other interested parties participating in the proceedings at the time of the retention application were aware of Chatz's dual roles, of Freeborn & Peters's representation of Chatz in each of those roles, and of the continued existence of the D&O claims. The court had taken note of the claims in its opinion transferring Knight's personal bankruptcy case to the Northern District of Illinois, see *In re Knight-Celotex*, 427 B.R. at 701, and Knight had listed the D&O claims on his bankruptcy schedules. Trustee Chatz had taken none of the steps needed to abandon the claims by the Companies' estate.

Knight asserts on appeal that his counsel "expressly sought confirmation at the Retention application hearing that [Freeborn & Peters] was, in fact, disinterested, in order to confirm that Chatz had decided not to pursue the D&O claims against Knight." This assertion is belied by the transcript. What Knight's counsel was seeking in his exchange with the court was less than clear, and whatever he sought, he hardly sought it "expressly." See Appx. 97 ("There's no objection . . . . I was curious, I didn't see in here where counsel indicated he represented Mr. Chatz as to his capacity as corporate trustee. But since we all know that's the case . . . I don't think that's a problem that it was omitted."). He plainly was aware of Freeborn & Peters's role as Chatz's counsel in the Companies' bankruptcy, and he raised no objection to the firm's dual representation. No response to Knight's

counsel's non-objection was required. We will not construe the trustee's silence regarding the D&O claims at this moment of the retention application hearing as an abandonment of those claims.

It defies belief to think that the trustee would have abandoned a possible multimillion dollar recovery on behalf of the Companies' creditors without a word, without complying with the statutory procedures for abandoning property, and probably in violation of his duties as trustee.[4] If Knight really thought that retaining Freeborn & Peters in the individual bankruptcy was inconsistent with pursuit of the D&O claims, he had ample opportunity to raise the issue *explicitly* at the time of the retention application. He chose instead to set a trap to be sprung when the trustee attempted to pursue or assign the D&O claims. Under these circumstances, the bankruptcy court did not abuse its discretion by finding that the trustee and Freeborn & Peters had not done anything "clearly inconsistent" with the trustee's later motion to assign the D&O claims to the Bank. We therefore agree with the district court that the omission of express reference to the D&O claims in the retention application motion was, on this record, at most a harmless violation of the disclosure obligations of section 327(a) and Rule 2014(a). It certainly

---

[4] If an asset is "burdensome" or of "inconsequential value," the trustee may abandon property after notice and a hearing under 11 U.S.C. § 554(a). No notice was given or hearing held, and at that stage the D&O claims could not have been deemed "burdensome" or of "inconsequential value."

was not a foundation for judicial estoppel to bar pursuit of the claims.

We also find no support in the record for the remaining two *New Hampshire v. Maine* considerations. The record does not support the conclusion that the trustee or Freeborn & Peters succeeded in "persuading" the bankruptcy court to accept the conclusion that the Companies' estate was abandoning its D&O claims against Knight. The bankruptcy court never suggested it viewed the D&O claims as abandoned or that it had been misled. See *New Hampshire v. Maine*, 532 U.S. at 750. The issue simply did not come up.

Similarly, nothing in the record suggests that Chatz, as trustee of the Companies, stood to derive an unfair advantage or impose an unfair detriment on Knight if not estopped. See *id*. at 751. Knight contends that the assignment order forced him to defend himself in the D&O litigation and put his eligibility for a discharge in question, and that the existence of the D&O claims "has cast a considerable pall" over his post-bankruptcy "fresh start." We agree with the district court that Knight could not have reasonably believed that Chatz intended to abandon so casually the D&O claims and the millions of dollars that they could bring into the Companies' estate. The prospect that Knight would have to defend himself against potentially valid claims does not amount to either an "unfair advantage" to the trustee or the Companies' estate, or an "unfair detriment" to Knight.

Even if we assume for the sake of argument that the Freeborn & Peters retention application violated the

disclosure requirements of 11 U.S.C. § 327(a) and that the firm should have been precluded from its simultaneous representation of Chatz in his dual trustee roles, it was entirely appropriate for the bankruptcy court to consider the fact that the bankruptcy code provides a statutory remedy. Section 328(c) permits the bankruptcy court to deny professional compensation to a person who has been retained under section 327 if it is determined that that person is not actually disinterested or "represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed." Knight complains that this sanction would not provide *him* with an effective remedy for the trustee's and Freeborn & Peters's lack of disclosure. But Knight has not shown that he should be entitled to any remedy at all. Even if we put aside the fact that he and his counsel were fully aware of the relevant facts, Knight has not shown how he suffered any injury by pursuit of the D&O claims or the hiring of Freeborn & Peters or the trustee. The bankruptcy court properly rejected Knight's judicial estoppel theory.

*Conclusion*

Like the bankruptcy court and the district court before us, we find that the larger equities at stake in this matter supported the bankruptcy court's refusal to invoke the doctrine of judicial estoppel. On this record, the omission of the D&O claims from the Freeborn & Peters retention application papers was a regrettable

mistake that led to this unnecessary litigation. That omission, however, did not warrant Knight's attempt to foreclose pursuit of the D&O claims altogether. All interested parties were aware of the pertinent facts, specifically of Chatz's dual roles as trustee in the Companies' bankruptcy and trustee in Knight's personal bankruptcy, of Freeborn & Peters's representation of Chatz in both of those roles, and of the existence of the D&O claims. The omission of an explicit reference to the D&O claims in the retention application was therefore harmless. Accordingly, there was no equitable basis for the bankruptcy court to invoke the doctrine of judicial estoppel and to find that Chatz abandoned the D&O claims, which would permit Knight to escape upwards of $34 million in potential liability. Refusing to do so was a sound exercise of the bankruptcy court's discretion.

AFFIRMED.