# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-40864

In the matter of: EDWARD MANDEL

      Debtor

United States Court of Appeals
Fifth Circuit

**FILED**
March 7, 2016

Lyle W. Cayce
Clerk

-----------------------------------------------------------------

EDWARD MANDEL,

      Appellant

v.

MASTROGIOVANNI SCHORSCH & MERSKY; ROSA ORENSTEIN,

      Appellees

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:12-CV-313

Before STEWART, Chief Judge, and OWEN and COSTA, Circuit Judges.
PER CURIAM:*

This case turns on whether Edward Mandel—a debtor in a Chapter 7 bankruptcy proceeding—has standing to appeal an order by the bankruptcy court allowing claims against his bankruptcy estate by the Appellees. The

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-40864

district court found that Mandel lacked standing to pursue his appeal and dismissed the case as moot. Because we hold that Mandel is a "person aggrieved" by the bankruptcy court's order, we REVERSE and REMAND.

## I.

Mandel's appeal involves multiple levels of court proceedings. The discord began with a dispute between Mandel and Steven Thrasher concerning a company called White Nile Software, Inc. Mandel and Thrasher were the two principal shareholders of the company, and the dispute escalated to extensive litigation in state court (the "White Nile Litigation").

Fearing that White Nile Software, Inc. was not being properly represented, the state court appointed Rosa Orenstein as receiver for the company in the litigation; Orenstein then hired the law firm Mastrogiovanni Schorsch & Mersky ("MSM") for her representation. The parties agreed to split Orenstein's and MSM's relevant costs.

Later, while the White Nile Litigation was ongoing, Mandel filed for Chapter 11 bankruptcy. In response, Orenstein and MSM filed claims against Mandel's estate for their agreed-upon compensation. The bankruptcy court allowed the claims (the "Claim Allowance Order" or "Order"),[1] and Mandel appealed that Order to the district court (the "Claim Allowance Appeal" or "Appeal"). The Claim Allowance Appeal is the subject of the appeal currently before us but is not the end of the story.

The bankruptcy court then appointed a Chapter 11 trustee, and the parties moved to abate the Claim Allowance Appeal until the Chapter 11 trustee decided whether he wished to pursue the Appeal on behalf of the estate. The district court allowed the trustee to intervene and asked the parties to

---

[1] Mandel objected to Appellees' claims in the bankruptcy court. The bankruptcy court held a trial on the claims, and allowed the claims for all but 5% of the amounts asserted.

2

## No. 15-40864

submit briefing on whether Mandel still had standing to pursue the Appeal as the Chapter 11 debtor-out-of-possession.  The trustee ultimately decided not to pursue the Appeal, and the remaining issue became whether Mandel still had standing.  Mandel's bankruptcy was then converted to a Chapter 7 proceeding, and the Chapter 11 trustee became the Chapter 7 trustee.

During the course of the Chapter 11 proceedings, Orenstein and MSM, among others, filed a complaint objecting to the dischargeability of their claims pursuant to 11 U.S.C. § 523 and to Mandel's discharge generally pursuant to 11 U.S.C. § 727 (the "Discharge Complaint").  The bankruptcy court has issued several continuances on the trial regarding the Discharge Complaint; as a result, the bankruptcy court has not ruled on the dischargeability of the claims that are the subject of the Claim Allowance Order.[2]

After additional briefing regarding developments in Mandel's bankruptcy case, the district court dismissed the Claim Allowance Appeal as moot, finding that Mandel did not have a sufficient interest in the Claim Allowance Order to establish standing.  Mandel timely appealed.

## II.

We review a district court's dismissal for lack of standing de novo. *Fortune Nat. Res. Corp. v. U.S. Dep't of Interior*, 806 F.3d 363, 366 (5th Cir. 2015).   To determine whether a party has standing to appeal a bankruptcy court order, this court uses the "person aggrieved" test.  *Id.* (citing *In re Coho Energy Inc.*, 395 F.3d 198, 202 (5th Cir. 2004)).  "The 'person aggrieved' test is an even more exacting standard than traditional constitutional standing," demanding "a higher causal nexus between act and injury."  *Id.*  Put succinctly, an "appellant must show that he was directly and adversely affected

---

[2] A trial on these complaints is presently set for March 22–March 24, 2016.

No. 15-40864

pecuniarily by the order of the bankruptcy court in order to have standing to appeal." *Id.*

## III.

We begin by agreeing with the district court that a debtor-out-of-possession will rarely have a sufficient interest to challenge a bankruptcy court order in a Chapter 7 proceeding. As the district court pointed out, when a debtor files for bankruptcy, his nonexempt property becomes part of the bankruptcy estate. *See* 11 U.S.C. § 541. In a Chapter 7 proceeding, a trustee is then appointed and that trustee typically liquidates all of the assets in the estate and distributes the proceeds to creditors. *See* 1 David G. Epstein, Steve H. Nickles & James J. White, *Bankruptcy* §§ 1–5, 1–7, at 9–13 (1992). Further, "the general rule is that once a trustee is in a bankruptcy case, the trustee, not the debtor or the debtor's principal, has the capacity to represent the estate and to sue and be sued." *Vega v. Gasper*, 36 F.3d 417, 422 (5th Cir. 1994) (citation and internal quotation marks omitted); *see also* 11 U.S.C. § 323. In other words, once Chapter 7 proceedings begin, the debtor-out-of-possession typically has no concrete interest in how the bankruptcy court divides up the estate.

However, despite a debtor-out-of-possession's generally limited interest in Chapter 7 proceedings, we hold that Mandel has standing to appeal the Claim Allowance Order. Appellees brought their claim against the estate, arguing that Mandel owed them money for their services in the White Nile Litigation. The Claim Allowance Order was an adjudication of that claim; indeed, the Order has res judicata effect if the Appellees are allowed to bring a suit outside of the bankruptcy proceeding. *See In re Bevan*, 327 F.3d 994, 997 (9th Cir. 2003) (stating that "the allowance or disallowance of 'a claim in bankruptcy is binding dand conclusive on all parties or their privies, and being in the nature of a final judgment, furnishes a basis for a plea of res judicata'"

4

No. 15-40864

(quoting *Siegel v. Fed. Home Loan Mortg. Corp.*, 143 F.3d 525, 529 (9th Cir. 1998))); *see also In re Fleury*, 306 B.R. 722, 727 (B.A.P. 1st Cir. 2004) (stating that "orders entered by the bankruptcy judge relating to [claims in a bankruptcy proceeding] are given full effect notwithstanding subsequent dismissal of the case").

Of course, Appellees are not currently allowed to bring their claim outside of the bankruptcy proceedings: there is a general stay of any actions by creditors against Mandel. *See* 11 U.S.C. § 362(a). In the meantime, Appellees have filed the Discharge Complaint, which the bankruptcy court has yet to rule on. If the Appellees are successful in pursuing the Discharge Complaint, the stay will be lifted, and they will be permitted to bring their claim directly against Mandel (supported by the res judicata force of the Claim Allowance Order). *See* 11 U.S.C. § 362(c)(2)(C).

The precise issue, then, is whether Mandel has standing to pursue his appeal given that: (1) the debt at issue in the Claim Allowance Order *may* not be discharged, thus exposing him to personal liability for the balance; and (2) the bankruptcy court has yet to rule on whether the relevant debt is dischargeable. For the following reasons, we hold that he does have standing.[3]

First, a successful appeal of the Claim Allowance Order by Mandel will have a dispositive impact on the bankruptcy court's adjudication of the Discharge Complaint. Appellees contested the dischargeability of their claims against Mandel in the Discharge Complaint. Put simply, if the district court sides with Mandel on the merits of his appeal, there will be no claim to find nondischargeable. Courts have generally held that "[a] Chapter 7 debtor

---

[3] This appeal would be relatively straightforward if Mandel could reasonably show that a successful challenge to the Claim Allowance Order would result in a surplus to the estate. *See Vega*, 36 F.3d at 422 (holding that a debtor has standing to challenge a claim against the estate where a successful challenge would result in a surplus). Mandel makes no such showing and, in fact, concedes that a successful appeal would not result in a surplus.

qualifies as a 'person aggrieved' for purposes of appellate standing . . . if he can demonstrate that defeat of the order on appeal . . . would affect his bankruptcy discharge." *See In re Beaulac*, 294 B.R. 815, 821 (B.A.P. 1st Cir. 2003) (per curiam) (citing *In re Thompson*, 965 F.2d 1136, 1142 (1st Cir. 1992)).

Second, the Claim Allowance Order functions as an adjudication of Appellees' claim against Mandel. Absent the stay in the bankruptcy proceedings, the Appellees could march straight into court with the Claim Allowance Order in hand and pursue their claim directly against him individually.[4] Courts have held that challenges to nondischargeable debt are not moot precisely because of the possibility of future proceedings directly against the debtor. *See Abel v. Campbell*, 334 F.2d 339, 341 (5th Cir. 1964) ("Because the tax liability survives the adjudication in bankruptcy, the bankrupt has standing to attack the proof of claim before the Referee and a right to appeal an adverse judgment."); *see also McGuirl v. White*, 86 F.3d 1232, 1235 (D.C. Cir. 1996) (similar). Further, several courts have extended that reasoning and stated that a debtor's challenge to a claim order by a bankruptcy court is not moot if the relevant debt *may* still be found nondischargeable. *See In re Curry*, 409 B.R. 831, 838 (Bankr. N.D. Tex. 2009) (stating that "[a] debtor has a pecuniary interest in the objection of a claim that may be non-dischargeable"); *In re Willard*, 240 B.R. 664, 668 (Bankr. D. Conn. 1999) (holding that the debt at issue "may never be discharged, and the debtor, accordingly, [held] a direct pecuniary interest in the outcome of [the] action for disallowance of [the challenged] claim, and ha[d] standing to pursue it").[5]

---

[4] As previously mentioned, Appellees would benefit from the res judicata effect of the Claim Allowance Order in any future proceeding against Mandel.

[5] Although *Curry* and *Willard* involved standing to object to a proof of claim at the bankruptcy court level, the court in each case found that the Chapter 7 debtor had a direct pecuniary interest in challenging the potentially nondischargeable claims. *But see In re Toms*, 229 B.R. 646, 659–60 (Bankr. E.D. Pa. 1999).

No. 15-40864

In *In re Knight-Celotex, LLC*, the Seventh Circuit analyzed bankruptcy standing in an analogous situation, and reached the same conclusion. 695 F.3d 714 (7th Cir. 2012). There, the case centered on the claims that two parties—a bank and a group of companies—held against an individual debtor in a Chapter 7 bankruptcy proceeding. *Id.* at 718. The Chapter 7 trustee allowed the group of companies to assign its claims against the individual debtor to the bank. *Id.* at 719. The debtor objected to the assignment arguing that the claims were precluded by judicial estoppel; the bankruptcy court overruled the objection; and the individual debtor appealed. *Id.* at 719–20. On appeal, the Seventh Circuit held that the individual debtor had standing to challenge the assignment. The court explained that, although "[b]ankruptcy standing is narrower than constitutional standing and requires that a person have a pecuniary interest in the outcome of the bankruptcy proceedings[, t]he prospect that [the assigned] claims might not be entirely discharged, at least to the extent they are based on fraud, is sufficient to give [the individual debtor] standing." *Id.* at 720 (citing 11 U.S.C. § 523) (citation and internal quotation marks omitted). In short, the court concluded that the individual debtor had standing because "[h]e faced the prospect of personal liability on some of the claims." *Id.*

We applied similar reasoning in *Vega*. There, plaintiffs obtained a judgment against the defendant in a labor suit. 36 F.3d at 420. While the appeal was pending, the defendant filed for bankruptcy, which was later converted to a Chapter 7 proceeding. *Id.* Plaintiffs filed a claim for the judgment amount with the bankruptcy court and later filed an adversary proceeding objecting under 11 U.S.C. § 523(a)(6) to the dischargeability of the judgment debt. *Id.* We held that the defendant-debtor's appeal of the judgment was not moot in part because "relief on appeal . . . will automatically inure to [the defendant-debtor's] benefit . . . by reducing the amount of any

7

debt—such as that which is the subject of plaintiffs' pending adversary proceeding—found nondischargeable." *Id.* at 422.[6]

In response, Appellees argue that Mandel's Appeal is moot because the relevant debt may be discharged in the future by the bankruptcy court. This argument puts the cart before the horse. The plain fact is the debt that is the subject of the Claim Allowance Order has not yet been discharged. We agree that it may be discharged in the future —and Mandel's appeal may become moot at that time—but that does not impact Mandel's standing at this moment. *See Moore v. Hosemann*, 591 F.3d 741, 744 (5th Cir. 2009) (stating that "any set of circumstances that eliminates actual controversy after the commencement of a lawsuit renders that action moot") (citation omitted).

Accordingly, we hold that Mandel is a "person aggrieved" by the Claim Allowance Order.

## IV.

For the foregoing reasons, we REVERSE the judgment of the district court and REMAND this matter for further proceedings consistent with this opinion.

---

[6] Although *Vega*'s reasoning is instructive, the case is not directly controlling, as it applied the constitutional "case or controversy" test for standing, rather than the heightened standard applied to appeals of bankruptcy court orders.