# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-40392

United States Court of Appeals
Fifth Circuit

**FILED**
September 7, 2018

Lyle W. Cayce
Clerk

In the Matter of: EDWARD MANDEL,

Debtor

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

EDWARD MANDEL,

Appellant,

v.

MASTROGIOVANNI SCHORSCH & MERSKY; ROSA ORENSTEIN,

Appellees.

Appeal from the United States District Court
for the Eastern District of Texas
USDC 4:12-CV-313

Before JOLLY, DENNIS, and ELROD, Circuit Judges.

PER CURIAM:[*]

    This is yet another appeal arising out of Edward Mandel's bankruptcy proceeding. Mandel removed a lawsuit originally filed in Texas state court into his federal bankruptcy proceeding. There was a receiver appointed by the state

---

[*] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

No. 17-40392

court in the removed case. The receiver filed a claim in the bankruptcy proceeding for fees incurred for her actions in the state court lawsuit and in the bankruptcy court. The bankruptcy court awarded the receiver fees, and Mandel disputes that award. Holding that some categories of fees awarded were proper, but some were improperly awarded, we AFFIRM the district court's judgment in part, but VACATE the fee award and REMAND to the bankruptcy court to recalculate the proper fee award.

I.

Edward Mandel's bankruptcy proceeding has spawned multiple appeals before this court.[1] Here, Mandel appeals the bankruptcy court's fee award to a receiver appointed in Texas state court litigation over the ownership of White Nile, a failed search engine start-up company. The receiver was appointed by the state trial court to protect White Nile's interests in the ownership dispute. While the White Nile litigation involved several parties disputing ownership and obligations, two are relevant here—Mandel and Steven Thrasher, White Nile's co-founders.[2]

### A.    The White Nile Receivership and Payment Dispute

A lawsuit over the ownership of White Nile was filed in Texas state court. As part of the litigation, the parties initially agreed to the appointment of a receiver to protect White Nile's interests in the litigation. The state trial court issued three orders relevant to the receivership before the case was removed to federal court as part of Mandel's bankruptcy.

The first state court receivership order set out the scope of the receiver's authority and agreed that the parties would propose three attorneys to act as

---

[1] *See, e.g.*, *In re Mandel*, 720 F. App'x 186 (5th Cir. 2018); *In re Mandel*, 641 F. App'x 400 (5th Cir. 2016); *In re Mandel*, 578 F. App'x 376 (5th Cir. 2014).

[2] The White Nile litigation was tried in Mandel's bankruptcy proceeding and twice appealed to this court. *See In re Mandel*, 720 F. App'x 186 (5th Cir. 2018).

No. 17-40392

a receiver. The parties were to meet and confer to see if they could agree on an appointment from the three proposed persons, but the order stated the court would appoint a receiver if the parties failed to agree. Mandel agreed to pay 52.5% of the receiver's fees and Thrasher 47.5% of the fees. The order also stated the receiver was without authority to retain independent counsel without notice to the parties and court approval.

The second state court receivership order appointed Rosa Orenstein, who is a bankruptcy attorney and who was one of the parties' proposed candidates, as the receiver. The scope of the receiver's duties were set out as follows: to "(1) direct and control White Nile's participation in this litigation; (2) take actual possession of all White Nile's books and records . . . and all bank accounts of White Nile; and (3) take constructive possession of all White Nile's other property." The second order restated the fee-sharing agreement between Mandel and Thrasher but did not include the prohibition on the retention of independent counsel. There was no language in the second receivership order stating that it vacated or supplanted the first receivership order.

The third relevant state court order is a payment order explaining the terms of payment for Orenstein and her retained counsel. Orenstein retained the firm Mastrogiovanni Schorsch & Merksy (Mastrogiovanni) to assist her in her capacity as receiver. Mandel and Thrasher initially agreed to Orenstein's retention of counsel, but soon Mandel began to object to the continued retention of Mastrogiovanni. Over Mandel's objection, the state court entered a formal order finding that Mastrogiovanni's retention was authorized under the receivership orders and stating Mandel and Thrasher's terms of payment to the receiver and Mastrogiovanni. The payment terms stated the percentage of fees each party was responsible for and the schedule for payment.

Mandel failed to comply with the terms of the payment order and wrote to the state court claiming an inability to financially comply. Orenstein moved

3

to compel compliance and the state court ordered financial discovery from Mandel. The state court held a hearing after Orenstein alleged that Mandel was not complying with the ordered financial discovery, but the state court continued the hearing to allow Mandel another opportunity to voluntarily comply and did not make a ruling at that time. Subsequently, Mandel initiated mandamus proceedings concerning the validity of the payment order and was ultimately denied relief by the Supreme Court of Texas. Orenstein hired an attorney at Hankinson Levinger to represent her in those mandamus proceedings. Mandel filed for bankruptcy on the day that the state trial court was set to resume the hearing on the enforcement of the payment order. Filing the bankruptcy case initiated a litigation stay halting the state court proceedings.

### B.    The Bankruptcy Court White Nile Proceedings

After Mandel filed for Chapter 11 bankruptcy, he removed the White Nile litigation to federal court. Orenstein and Mastrogiovanni then filed claims against Mandel's bankruptcy estate. Orenstein also filed a claim on behalf of White Nile. Thrasher also filed claims individually and derivatively on behalf of White Nile. In the bankruptcy case, Orenstein filed three motions to lift the automatic stay, three corresponding motions to remand, a motion to appoint a trustee, objections to the appointment of additional counsel for Mandel, and opposed cash collateral motions. In connection with the motion to appoint a trustee, Mandel sought to depose Orenstein and she retained counsel to defend herself.

The White Nile matter was tried as an adversarial proceeding in the bankruptcy case as a derivative claim of Thrasher. Although Orenstein had made multiple filings in the bankruptcy case-in-chief, the bankruptcy court excused her from participating in the actual White Nile ownership adversarial proceeding. The bankruptcy court did so in a scheduling order on White Nile's

4

claims that excused Orenstein from participation in the adversarial proceedings unless Thrasher paid all her expenses. After the trial on Thrasher's derivative claim in the bankruptcy court, but before the bankruptcy court issued its opinion, the bankruptcy court severed and remanded Orenstein's and Mastrogiovanni's claims for receivership fees against Thrasher to the state trial court. The state trial court then approved a settlement between Orenstein, Mastrogiovanni, and Thrasher, to which Mandel was not a party.

### C.    The Bankruptcy Court Claims Hearing

After the bankruptcy court tried the White Nile matter, the bankruptcy court issued an order in the bankruptcy case on Orenstein and Mastrogiovanni's claims for fees. Mandel had filed objections to both Orenstein and Mastrogiovanni's claims. He asserted that Orenstein was only entitled to pre-petition fees of $10,468.42 because she was not entitled to fees for the duplicative White Nile claim in the bankruptcy case, there was insufficient documentation of her claim otherwise, and the receivership orders did not provide recovery for her fee dispute with Mandel.

Following the hearing on Orenstein and Mastrogiovanni's claims, the bankruptcy court issued its findings and concluded that, Orenstein was entitled to $315,553 in total fees for her work as White Nile's receiver and Mastrogiovanni was entitled to $155,517 in total fees for its work assisting Orenstein, as unsecured claims. The award included fees incurred from the time Orenstein was appointed as receiver through the adversary proceeding in the bankruptcy court. Encompassed in the award were fees for Orenstein and Mastrogiovanni's actions in the state court proceedings, the proceedings in

No. 17-40392

bankruptcy court following removal, and representing White Nile as a creditor of Mandel's bankruptcy estate.[3]

Mandel appealed the award to the district court raising thirteen issues on appeal. Initially, the district court dismissed the appeal on standing grounds, but was reversed by this court in *In re Mandel*, 641 F. App'x 400 (5th Cir. 2016), which held that Mandel still had standing after the conversion of his Chapter 11 bankruptcy proceeding to a Chapter 7 proceeding. *Id.* at 405. The district court subsequently overruled each of Mandel's objections on appeal from the bankruptcy court and affirmed the award. In doing so, the district court concluded that the bankruptcy court accounted for the retention of unauthorized attorneys by reducing the award from amount of fees that Orenstein and Mastrogiovanni had sought. Mandel timely appeals.

II.

"When a court of appeals reviews the decision of a district court, sitting as an appellate court, it applies the same standards of review to the bankruptcy court's findings of fact and conclusions of law as applied by the district court." *Jacobsen v. Moser* (*In re Jacobsen*), 609 F.3d 647, 652 (5th Cir. 2010) (quoting *Kennedy v. Mindprint* (*In re ProEducation Int'l, Inc.*), 587 F.3d 296, 299 (5th Cir. 2009)). "This court reviews the bankruptcy court's findings of fact under the clearly erroneous standard . . . but the bankruptcy court's conclusions of law are subject to *de novo* review." *Pierson & Gaylen v. Creel & Atwood* (*In re Consol. Bancshares, Inc.*), 785 F.2d 1249, 1252 (5th Cir. 1986) (citations omitted).

---

[3] Included in the bankruptcy court's fee calculation were Orenstein and Mastrogiovanni's fees incurred in the state court litigation (including the financial discovery and mandamus proceedings); all fees incurred in the bankruptcy case (including filings in the bankruptcy case-in-chief, filings in the removed White Nile matter, and time spent assisting Thrasher in litigating the White Nile derivative claim); and fees incurred retaining counsel to assist Orenstein.

No. 17-40392

III.

Mandel asserts here that he is only contesting the district court's legal findings to support the fee award—not the specific numeric amounts awarded.[4] Our review, therefore, looks solely at whether the district court correctly determined that Orenstein was entitled to certain categories of fees as a matter of law. As such, we do not address whether the fee amounts have been properly proven up as supported by the record and evidence within the respective categories.

The contested categories of fees include: (1) any fees incurred assisting other claimants in the bankruptcy court White Nile trial; (2) Orenstein's work representing White Nile as a creditor in the bankruptcy proceeding; (3) fees incurred for hiring attorneys not specifically approved by the state court, both pre-bankruptcy petition in state court and post-petition in bankruptcy court; and (4) post-petition attorneys' fees in the bankruptcy court.[5] Mandel does not contest Orenstein's entitlement to pre- or post-petition fees incurred while acting in her capacity as White Nile's receiver or Mastrogiovanni's entitlement to pre- and post-petition fees for acting as counsel to Orenstein in her capacity as receiver. Mandel acknowledges that Orenstein and Mastrogiovanni are entitled to some amount of fees from the bankruptcy estate, but insists the district court erred in affirming the bankruptcy court's award in full. We agree, and we remand the case to the bankruptcy court to calculate a fee award consistent with our opinion as follows.

---

[4] Under the receivership orders, Mandel and Thrasher were responsible for their respective portions of Orenstein's fees. Orenstein and Mastrogiovanni settled with Thrasher for his portion of fees owed.

[5] Mandel raised multiple points of error on appeal in his briefing. At oral argument, he listed these categories as the ones he contests.

No. 17-40392

IV.

We first turn to the award of fees for Orenstein's role in the White Nile adversary proceeding, which was tried as a derivative claim of Thrasher in the bankruptcy case. Orenstein assisted Thrasher in trying the White Nile matter as a derivative claim. Mandel argues that because the bankruptcy orders excused Orenstein from participating in the White Nile trial she was not entitled to any fees awarded after the bankruptcy court's order. Orenstein maintains that any assistance after the order excusing her was done in her capacity as receiver. The bankruptcy court found that Orenstein was acting in her capacity as a receiver. "A finding is clearly erroneous if a review of the record leaves a definite and firm conviction that a mistake has been committed." *Boudreaux v. United States*, 280 F.3d 461, 466 (5th Cir. 2002) (internal quotations and citations omitted).

The White Nile litigation was tried as a derivate claim of Thrasher. The bankruptcy court excused Orenstein from participating in the trial itself unless Thrasher paid her fees. Subsequently, Orenstein responded to discovery propounded on White Nile and was subpoenaed to testify in her capacity as a receiver. Explaining the order excusing Orenstein, the bankruptcy court stated in the opinion awarding fees that: the "court was simply allowing Orenstein to not appear at trial without violating her fiduciary duties when the claims she was asserting were duplicative of the derivative claims asserted by Thrasher for White Nile, and there was a significant risk of nonpayment to her and her counsel." The bankruptcy court made a factual finding that Orenstein was carrying out her duties as a receiver in providing any assistance to Thrasher, who was representing White Nile's interests in the adversary proceeding. Mandel has not shown that this factual finding was clearly

No. 17-40392

erroneous. Therefore, there was no error in awarding Orenstein fees for her work as a receiver in the White Nile adversarial proceeding.[6]

V.

The main question of law on appeal is the scope of Orenstein's authority under the state court receivership orders and whether Orenstein had the authority to act as White Nile's attorney as a claimant in the bankruptcy case-in-chief. The bankruptcy court concluded that the state court receivership orders authorized Orenstein to represent White Nile as a claimant in Mandel's bankruptcy proceeding in addition to her duties as White Nile's receiver in the ownership dispute litigation. The district court agreed. We do not.[7]

The removal of the state court litigation in which Orenstein was appointed as receiver to federal court did not expand the receiver's powers under the court order. "A receiver has only that authority conferred by the Court's order appointing him." *Ex parte Hodges*, 625 S.W.2d 304, 306 (Tex. 1981). "We give effect to an order 'in light of the literal language used if the language is unambiguous.'" *Clay Exploration, Inc. v. Santa Rosas Operating, LLC*, 442 S.W.3d 795, 800 (Tex. App.—Houston [14th Dist.] Aug. 14, 2014, no pet.) (quoting *Reiss v. Reiss*, 118 S.W.3d 439, 441 (Tex. 2003). Judicial orders, "like other written instruments, are to be construed as a whole toward the end

---

[6] Mandel does not contest as a matter of law the award of any fees to Orenstein in her capacity as a receiver that were incurred post-bankruptcy petition.

[7] Because we determine that Orenstein was not entitled to attorneys' fees for representing White Nile as a creditor in the bankruptcy proceeding, we do not need to address Mandel's arguments that the bankruptcy court's fee award was erroneous both because it was not allowed under Texas's fee shifting provisions and because Orenstein was not successful in many of her filings. In addition, we note the bankruptcy court already stated that it did not award any fees for work done solely in Orenstein's personal capacity post-petition. To the extent Mandel objected to any work that Orenstein did post-petition in the bankruptcy proceedings where there was potential overlap between work done in her personal capacity as a creditor and her capacity representing White Nile as a creditor, that concern is obviated by our holding that she is not entitled to fees for acting as White Nile's attorney in the bankruptcy proceeding.

9

of harmonizing and giving effect to all the court has written." *Id.* (quoting *Constance v. Constance*, 544 S.W.2d 659, 660 (Tex. 1976)). Both the first and second state court receivership orders define the receiver's powers identically to:

> (1) direct and control White Nile's participation in this litigation; (2) take actual possession of all White Nile's books and records, including but not limited to all files of White Nile's current and prior counsel in this litigation, and all bank accounts of White Nile; and (3) take constructive possession of all White Nile's other property.

The relevant question, therefore, is whether the term "this litigation" conferred on Orenstein a broad authority to represent White Nile's interests in all litigation involving the entity, or authority limited to representing White Nile's interests in the ownership dispute, both in the state court and upon the removal of the matter to federal court.[8] We conclude it is the latter.

"[T]his litigation" is a limiting term in the state court's receivership orders. *See Newman v. Toy*, 926 S.W.2d 629, 631 (Tex. App.—Austin 1996, writ denied) (explaining that a receiver steps into the shoes of the prior shareholder except as limited by statute or the "the terms of the trial-court order"). At the time the receivership orders were agreed to there was no bankruptcy case. In context, "this litigation" referred to the ownership dispute in state court over White Nile. Mandel removed the state court dispute to be tried as an adversarial proceeding in the bankruptcy case. Orenstein was

---

[8] Upon removal, the state court receivership orders maintained effect in federal court. 28 U.S.C. § 1450 ("All injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court."); *Nissho-Iwai American Corp. v. Kline*, 845 F.2d 1300, 1304 (5th Cir. 1988) ("[W]henever a case is removed, interlocutory state court orders are transformed by operation of 28 U.S.C. § 1450 into orders of the federal district court to which the action is removed."). Mandel does not assert that removal affected the validity of the receivership order post-removal, only whether the actions the receiver took post-removal were authorized under those orders.

appointed as a receiver for White Nile under the state court orders and not as White Nile's counsel. Removing the state court ownership dispute to federal court to be tried as one component of a larger bankruptcy proceeding did not confer broader authority on Orenstein than she would have had if the ownership dispute had remained in state court. The venue for the ownership dispute litigation simply changed.

The state court's actions after the bankruptcy court's remand of Orenstein's claims against Thrasher also supports interpreting "this litigation" narrowly to only refer to the White Nile ownership litigation. After the claims for Thrasher's share of the receivership fees were remanded to the state trial court, Orenstein sought permission from the state court as White Nile's receiver to file a lawsuit against Mandel's former attorneys for misrepresentations, which was denied. The state trial court, therefore, did not interpret the receivership orders as giving Orenstein the authority to act generally on behalf of White Nile. The bankruptcy court did not modify the receivership orders. Thus, Orenstein did not have authority under the receivership orders to act generally on White Nile's behalf in the bankruptcy case. *See* 28 U.S.C. § 1450. Representing White Nile as a creditor in the bankruptcy proceeding was a broader exercise of authority than delegated to Orenstein by the term "this litigation."[9] As such, the bankruptcy court erred to the extent it awarded attorneys' fees based on the receivership orders to Orenstein and Mastrogiovanni for work in the bankruptcy proceeding beyond

---

[9] Orenstein's failure to obtain clarification from either the bankruptcy court or the state court on the scope of her authority is especially troubling as she was representing herself and Mastrogiovanni as creditors of the bankruptcy estate at the same time as her representation of White Nile as a creditor against that same estate.

No. 17-40392

work done solely in Orenstein's capacity as receiver in the White Nile litigation.[10]

## VI.

Having determined that the receivership orders did not authorize Orenstein to represent White Nile as a creditor in the bankruptcy proceeding, we turn to whether the receivership orders generally authorized the retention of additional counsel to assist her in duties as receiver, in the mandamus proceedings, and in representing White Nile as an attorney in the bankruptcy case. The bankruptcy court ruled that under the state court receivership orders, as a matter of law, Orenstein had the right to retain counsel to represent her in her performance of her receivership duties. We conclude that Orenstein was authorized under the orders to retain counsel to assist her in her duties as the receiver and that Orenstein's actions in retaining counsel in the mandamus proceedings were done in her capacity as the receiver. We conclude, however, that the retention of counsel to assist in the bankruptcy case was not authorized because Orenstein was not acting in her capacity as receiver when representing White Nile as a creditor in the bankruptcy.

We construe the three state court receivership orders "toward the end of harmonizing and giving effect to all the court has written." *Clay Exploration*,

---

[10] Because we are reviewing the bankruptcy and district court's judgments only for legal error, we do not express an opinion on the sufficiency of the evidence to support the award of a particular dollar amount in damages. We do however note that on remand the bankruptcy court should consider whether Orenstein properly segregated her fees and to what extent co-mingled fees could support an award of fees to Orenstein in her capacity as receiver. *See, e.g.*, *Bergeron v. Sessions*, 561 S.W.2d 551, 554 (Tex. Ct. App.—Dallas, 1977, writ ref'd n.r.e.) (stating that where a receiver served as both receiver and his own attorney he was required to segregate his fees); *see also Kotz v. Murariu*, No. 04-12-00420-CV, 2013 WL 6205457, at *1–2 (Tex. App.—San Antonio Nov. 27, 2013, no pet.) (mem. op., not designated for publication); *Bishop v. Smith*, No. 09-08-00185-CV, 2009 WL 5205362, at *6 (Tex. App.—Beaumont, Dec. 31, 2009, no pet.); *Hodges v. Peden*, 634 S.W.2d 8, 11 (Tex. App.—Houston [14th Dist.] Apr. 8, 1982, no writ).

## No. 17-40392

442 S.W.3d at 800.  A receiver has only the authority conferred by the order appointing her.  *Ex parte Hodges*, 625 S.W.2d at 306.

The first state court receivership order expressly prohibited the receiver from retaining independent counsel "without leave of the court after notice to all parties and hearing."  The second state court receivership order did not contain this prohibition.  Whether Orenstein had the authority to retain independent counsel turns on whether the second receivership order gave effect to the first order or amended the terms of the first order.  Mandel argues the terms of the first order remained in full effect.  Orenstein argues that the state court's payment order already decided the issue of her power to retain independent counsel in her favor.

In the payment order, the state court concluded that "the Receiver's determination that she required the ongoing services of independent counsel was appropriate and within her authority and that the parties additionally acquiesced in and encouraged that engagement."  Harmonizing the payment order with the receivership orders, Orenstein had authority to retain counsel to assist her in her duties as receiver.  *See Clay Exploration*, 442 S.W.3d at 800.  Orenstein and Mastrogiovanni were acting in their capacities as receiver and counsel, and not for their own efforts and at their own imperilment, as the state court acknowledged at the November 12, 2009 hearing on the receiver's motion to compel payment.  The collection efforts were the result of Mandel claiming an inability to financially comply with the payment terms of the receivership orders and the payment order.  The bankruptcy court did not err in awarding fees for attorneys retained in the attempt to collect Mandel's share of the receivership payments from when the state court proceedings.[11]

---

[11] As the collection efforts were done in Orenstein's capacity as receiver, the award of fees to her and Mastrogiovanni for these efforts was not error either.

13

No. 17-40392

As to the retention of counsel in the bankruptcy case, we have already determined that Orenstein was not authorized to represent White Nile as a creditor in the bankruptcy proceeding, and therefore, her retention of independent counsel to assist her in those matters would likewise not be authorized. However, fees for those attorneys were already excluded from the award. As the district court noted, the bankruptcy court reduced the award to reflect that Orenstein brought superfluous attorneys to the bankruptcy court proceedings. Mandel argues that he is not challenging the award of fees as an issue of fact, only as a matter of law. Our review is therefore limited to whether a category of fees was included in the fee award. The district court found that the bankruptcy court already accounted for the retention of superfluous attorneys in the bankruptcy proceedings and reduced the fee award accordingly. Therefore, this category was already excluded.

Therefore, there was no error as a matter of law as to the award of fees for the retention of independent counsel. The district court properly awarded fees for independent counsel retained in the state court proceedings and already excluded fees for the additional counsel retained in the bankruptcy case.

VII.

Finally, there is no need here to address Mandel's argument that attorneys' fees incurred post-petition are not allowable to an unsecured creditor under the Bankruptcy Code. Because we hold that Orenstein's receivership authority did not allow her to represent White Nile as a creditor, any attorneys' fee she incurred post-petition were not authorized by her pre-petition receivership orders. Therefore, we need not address the legal issue of whether the award of the post-petition attorneys' fees is allowed under the Bankruptcy Code.

14

No. 17-40392

VIII.

The judgment of the district court is AFFIRMED in part.  We VACATE the fee award to Orenstein and Mastrogiovanni and REMAND to the bankruptcy court with orders to recalculate the award amount to Orenstein and Mastrogiovanni as is consistent with this opinion.