United States Court of Appeals
Fifth Circuit

**F I L E D**

**October 12, 2005**

Charles R. Fulbruge III
Clerk

REVISED NOVEMBER 3, 2005

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 05-20145
Summary Calendar

In the Matter Of: BOBBY CAHILL; JANICE CAHILL

Debtors

WALKER & PATTERSON, P.C.

Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before KING, Chief Judge, and DAVIS and STEWART, Circuit Judges.

PER CURIAM:

Appellant law firm Walker & Patterson, P.C., represented debtors Bobby and Janice Cahill in a Chapter 13 bankruptcy proceeding. Walker & Patterson now appeals the district court's order affirming the bankruptcy court's award of reduced attorneys' fees in that proceeding. For the following reasons, we AFFIRM.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

On September 11, 2003, Walker & Patterson filed a Chapter 13 case on behalf of Bobby and Janice Cahill in the United States

Bankruptcy Court for the Southern District of Texas. Walker & Patterson initially filed with the petition a Chapter 13 plan proposing sixty monthly payments of $226.34 to the trustee to pay three secured claims, two Internal Revenue Service priority claims, and $2500 of attorneys' fees.[1] The plan also allotted $382.53 to unsecured creditors (roughly a one-percent payment of the unsecured claims) and proposed that the Cahills continue to make monthly payments on their mobile home and on a fishing boat used purely for recreational purposes. After responding to motions from various creditors and moving to postpone the confirmation hearing, Walker & Patterson filed an amended plan that, among other things, increased the balance of attorneys' fees to be paid under the plan to $3000.

After the bankruptcy court confirmed the Cahills' amended Chapter 13 plan, Walker & Patterson filed a fee application together with contemporaneous time records. According to the time records, Walker & Patterson spent 13.20 attorney hours on the case, 2.05 paralegal hours, and $12.33 in out-of-pocket expenses. Based on its hourly rates, Walker & Patterson claimed a total amount of $3758.08.

Although no objection was filed to the fee request, the bankruptcy court sua sponte entered an order for a hearing on the

---

[1] Because Walker & Patterson had already accepted $500 in compensation from the Cahills, $2500 represented the "balance due" on a fee totaling $3000.

request.  After the hearing, the bankruptcy court found that Walker & Patterson's initial fee request was unreasonably high given that "[t]here was nothing terribly unusual about the case," and, "[i]f anything, the case appear[ed] to involve less activity than most."  In re Cahill, Order Allowing Fees for Debtors' Counsel, No. 03-43024-H2-13, at 2 (Bankr. S.D. Tex. Sept. 19, 2004).

Applying the criteria for "reasonable compensation" enumerated in 11 U.S.C. § 330(a)(3) (2000) and the factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974), the bankruptcy court awarded Walker & Patterson $1737[2] in attorneys' fees plus $12.33 in expenses based on the following findings: (1) the time spent by Walker & Patterson greatly exceeded that spent by other counsel in a typical Chapter 13 case, and in some cases Walker & Patterson's attorneys duplicated each other's efforts; (2) the rates that Walker & Patterson charged exceeded the reasonable and customary hourly rate for Chapter 13 practitioners in the area; (3) Walker & Patterson performed unnecessary work pertaining to the payment of a secured claim to keep a boat used solely for recreational purposes; (4) Walker & Patterson did not adequately prepare the case for the first confirmation hearing and did not perform its

---

[2] This amount includes the $500 that Walker & Patterson received previously; thus, the actual amount outstanding was $1237.

services in a particularly timely manner; (5) the proposed fee amount substantially exceeded the customary compensation for comparably skilled non-bankruptcy practitioners, and no adequate basis for a premium was shown; (6) the case was less novel, less complicated, and less undesirable than most; (7) the fee was not contingent; (8) neither the case nor the client imposed exceptional time constraints; (9) the attorney-client relationship was not a factor in this case; and (10) the typical attorneys' fee award in similar cases totaled $1737. The bankruptcy court determined that, given the totality of these findings, $1737 was a reasonable fee for a "typical" Chapter 13 proceeding such as this one. The bankruptcy court made this determination relying on the lodestar calculation in General Order 2004-5, "Order Regarding Chapter 13 Debtors' Counsel's Fees," U.S. Bankr. Ct. Rules S.D. Tex., 427-36 (as entered Apr. 14, 2004) (West 2005), a per curiam order setting forth standards to guide bankruptcy courts in awarding Chapter 13 attorneys' fees in "typical" cases.[3]

Walker & Patterson appealed the bankruptcy court's award of fees to the district court, contending that the bankruptcy court erred by relying on the General Order 2004-5 "typical case"

---

[3] General Order 2004-5 was authored by Judge Isgur and signed by all of the bankruptcy judges in the Southern District of Texas. The Order reflects that in signing the Order, all of the bankruptcy judges adopted the procedures, but not necessarily the reasoning, set forth therein. General Order 2004-5 at 427, fn.1.

lodestar calculation to determine the total fee awarded instead of using the traditional lodestar approach, and that Walker & Patterson should have received the full amount requested in its fee application. The district court affirmed the bankruptcy court's fee award. This appeal followed.

## II.  DISCUSSION

### A.  Standards of Review

We review the district court's decision by applying the same standard of review to the bankruptcy court's conclusions of law and findings of fact that the district court applied. In re Jack/Wade Drilling, Inc., 258 F.3d 385, 387 (5th Cir. 2001). We therefore review the bankruptcy court's award of attorneys' fees for abuse of discretion. In re Coho Energy, Inc., 395 F.3d 198, 204 (5th Cir. 2004); In re Barron, 325 F.3d 690, 692 (5th Cir. 2003). An abuse of discretion occurs where the bankruptcy court (1) applies an improper legal standard or follows improper procedures in calculating the fee award, or (2) rests its decision on findings of fact that are clearly erroneous. In re Evangeline Refining Co., 890 F.2d 1312, 1325 (5th Cir. 1989). Accordingly, we review the bankruptcy court's legal conclusions de novo and its findings of fact for clear error. Coho Energy, 395 F.3d at 204; Barron, 325 F.3d at 692.


### B.  Analysis

Walker & Patterson argues that the district court erred by: (1) affirming the bankruptcy court's use of a "typical case" lodestar calculation as provided in General Order 2004-5 rather than a traditional lodestar calculation for analyzing its fee request under 11 U.S.C. § 330; (2) affirming the factual finding that Walker & Patterson's attorneys duplicated each other's efforts in preparing the case, a factor which justified a reduction of the fee request; and (3) affirming the factual finding that Walker & Patterson had not adequately prepared the case for confirmation. We consider each of these arguments in turn.

**1. Calculation of Attorneys' Fees**

Section 330 of the Bankruptcy Code gives bankruptcy courts discretion to award reasonable compensation to debtors' attorneys in bankruptcy cases. 11 U.S.C. § 330(a)(1)(A). This authority includes the discretion, upon motion or sua sponte, to "award compensation that is less than the amount requested." Id. § 330(a)(2). Section 330(a)(3) further directs courts to "consider the nature, the extent, and the value of" the legal services provided when determining the amount of reasonable compensation to award, taking into account "all relevant factors," including, but not limited to:

> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial at the time at which

the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

Id. § 330(a)(3).

The Fifth Circuit has traditionally used the lodestar method to calculate "reasonable" attorneys' fees under § 330. In re Fender, 12 F.3d 480, 487 (5th Cir. 1994). A court computes the lodestar by multiplying the number of hours an attorney would reasonably spend for the same type of work by the prevailing hourly rate in the community. Shipes v. Trinity Indus., 987 F.2d 311, 319 (5th Cir. 1993). A court then may adjust the lodestar up or down based on the factors contained in § 330 and its consideration of the twelve factors listed in Johnson, 488 F.2d at 717-19.[4] See Fender, 12 F.3d at 487. While the bankruptcy

_____

[4] The Johnson factors are as follows:

(1) the time and labor required;
(2) the novelty and difficulty of the questions;
(3) the skill requisite to perform the legal service properly;
(4) the preclusion of other employment by the attorney due to acceptance of the case;
(5) the customary fee;
(6) whether the fee is fixed or contingent;
(7) time limitations imposed by the client or the circumstances;
(8) the amount involved and the results obtained;

court has considerable discretion in applying these factors, <u>In re First Colonial Corp. of America</u>, 544 F.2d 1291, 1298 (5th Cir. 1977), it must explain the weight given to each factor that it considers and how each factor affects its award.  <u>Fender</u>, 12 F.3d at 487; <u>Evangeline Refining Co.</u>, 890 F.2d at 1327-28 ("If a court awards fees but fails to explain why compensation was awarded at the level it was given, it is difficult, if not impossible, for an appellate court to engage in meaningful review of a fee award.").

We find nothing improper in the bankruptcy court's use of the precalculated lodestar amount contained in General Order 2004-5 in this case.  General Order 2004-5 attempts to clarify and streamline bankruptcy courts' review of Chapter 13 attorneys' fee applications, addressing the need for both efficiency and flexibility in handling the large number of Chapter 13 cases that bankruptcy courts in the Southern District of Texas review each year.[5]  General Order 2004-5 at 427; <u>cf.</u> <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 437 (1983) (noting that "[a] request for attorneys'

_____

> (9) the experience, reputation and ability of the attorneys;
> (10) the "undesirability" of the case;
> (11) the nature and length of the professional relationship with the client; and
> (12) awards in similar cases.

<u>Johnson</u>, 488 F.2d at 719.

[5] General Order 2004-5 indicates that approximately 26,000 Chapter 13 cases are currently pending before bankruptcy courts in the Southern District of Texas, and approximately 12,000 more will be filed in the next year.  General Order 2004-5 at 427.

fees should not result in a second major litigation."). To this end, General Order 2004-5 provides bankruptcy courts with reasonable attorney time estimates for completing a "typical" Chapter 13 case and customary rates for Chapter 13 services in the Southern District of Texas, which, when multiplied together, yield a typical lodestar amount of $1737.[6] General Order 2004-5 at 433. This precalculated lodestar aids bankruptcy courts in disposing of run-of-the-mill Chapter 13 fee applications expeditiously and uniformly, obviating the need for bankruptcy courts to make the same findings of fact regarding reasonable attorney time expenditures and rates in typical cases for each fee application that they review.

General Order 2004-5 nevertheless anticipates that bankruptcy courts evaluating traditional fee applications will continue to analyze and adjust fee applications on a case-by-case

_____

[6] According to General Order 2004-5, the time typically spent on a Chapter 13 case is 5.7 attorney hours and 5.3 paralegal hours; the reasonable and customary rates are $235 per hour for attorneys and $75 per hour for paralegals. General Order 2004-5 at 433. Walker & Patterson argues that the bankruptcy court's reliance on these factual findings in General Order 2004-5 was improper because "General Order 2004-5 makes significant factual findings without the benefit of an evidentiary hearing, open forum discussion or public comment." Appellant's Br. at 10. This argument is without merit because Walker & Patterson was afforded an evidentiary hearing on its fee request in which the bankruptcy court, while incorporating General Order 2004-5 into its analysis, considered and ruled on the disputed factual issues specific to Walker & Patterson's claim. See In re United States Golf Corp., 639 F.2d 1197, 1202 (5th Cir. 1981) (requiring the bankruptcy court to hold an evidentiary hearing on an attorneys' fee request if there are disputed factual issues).

basis using the lodestar analysis and flexible <u>Johnson</u> factors,

ensuring that the lodestar amount in an <u>atypical</u> case will be

adjusted to reflect the specifics of that case.[7] <u>Id.</u> at 2. This

approach strikes the proper balance between the need for

efficient disposal of attorneys' fee applications and the need

for a flexible approach that provides for adjustment of the

lodestar when necessary.[8]

In this case, the bankruptcy court did not abuse its

---

[7] The majority of General Order 2004-5 consists of a discussion of the preapproval of reasonable fixed fee amounts in "typical" cases, using the lodestar calculation of $1737 and applying the § 330 and <u>Johnson</u> factors to determine a range of acceptable fixed fees that courts may preapprove with minimal scrutiny.  We decline to address this portion of General Order 2004-5 because the fee arrangement in this case was not fixed.

[8] Walker & Patterson suggests that the Sixth Circuit has rejected this line of reasoning in <u>In re Boddy</u>, 950 F.2d 334 (6th Cir. 1991), in holding that the bankruptcy court in that case abused its discretion by awarding a predetermined maximum attorneys' fee amount for "normal and customary" legal services instead of adhering to the traditional lodestar method.  That case is easily distinguished from the instant case, however, because the bankruptcy court in <u>Boddy</u> mechanically awarded the predetermined maximum fee without conducting any further analysis to determine whether the case was "normal and customary" or whether an adjustment of the fee amount was appropriate.  <u>Id.</u> at 337.  Consistent with our analysis in this case, the Sixth Circuit explained:

> [W]e do not hold that the bankruptcy court can never consider the "normal and customary" services rendered in a Chapter 13 bankruptcy.  The court can legitimately take into account the typical compensation that is adequate for attorneys' fees in Chapter 13 cases, as long as it expressly discusses these factors in light of the reasonable hours actually worked and a reasonable hourly rate.

<u>Id.</u> at 338.

discretion by using the precalculated lodestar amount to determine Walker & Patterson's fee award because it properly applied the § 330 and <u>Johnson</u> factors to the specific facts of the case, setting forth a reasoned analysis and providing reasons why the lodestar amount did not need to be adjusted.  <u>See</u> <u>In re Evangeline Refining Co.</u>, 890 F.2d at 1327-28 (emphasizing that a bankruptcy court must explain its reasons for its award of attorneys' fees).  Moreover, the bankruptcy court did not give the General Order lodestar calculation a disproportionate amount of weight in its analysis as Walker & Patterson suggests: Its findings that Walker & Patterson's attorneys spent an unreasonable amount of time on the case, duplicated each other's efforts, performed unnecessary work, were unprepared for the confirmation hearing, and were handling a case that presented no novel or complex issues support its conclusion that this case did not warrant an upward adjustment of the lodestar amount under § 330 or <u>Johnson</u>.  <u>Compare</u> <u>In re United States Golf Corp.</u>, 639 F.2d 1197, 1199 (5th Cir. 1981) (holding that the bankruptcy court abused its discretion by applying a predetermined "maximum limit" to reduce the requested amount of attorneys' fees "despite the favorable findings [it] had made of the <u>Johnson</u> factors").

**2. Factual Finding of Duplication of Effort**

Walker & Patterson next argues that the bankruptcy court erred in finding that Walker & Patterson's attorneys duplicated

each other's efforts in their preparation of the Chapter 13 case, a factor that affected the bankruptcy court's lodestar analysis.

Because we review the bankruptcy court's findings of fact for clear error, we will defer to a bankruptcy court's factual findings unless, after reviewing all of the evidence, "we are left with a 'firm and definite conviction' that the bankruptcy court made a mistake." In re Bradley, 960 F.2d 502, 507 (5th Cir. 1992) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 365 (1948)). After reviewing the billing records in this case, the bankruptcy court found evidence that the attorneys had worked on overlapping pieces of the case and spent excess time bringing each other up to speed on tasks begun by the other. Additionally, the bankruptcy court found some indication that the billing records may not have been contemporaneous and correct. After our review of the record, nothing leaves us with a "'firm and definite conviction' that the bankruptcy court made a mistake" in making these factual findings. Id.; see also In re Young, 995 F.2d 547, 549 (5th Cir. 1993) (deferring to the bankruptcy court's findings of fact in the absence of evidence of clear error).

**3. Factual Finding of Inadequacy of Preparation**

Finally, Walker & Patterson challenges the bankruptcy court's finding that Walker & Patterson failed to prepare the case adequately for the first confirmation hearing. In light of

-12-

our deferential standard of review, we also decline to disturb this finding of fact. The bankruptcy court is in a better position to make this factual determination than we are, particularly because it presided over the Chapter 13 proceeding and confirmation hearing at issue. See United States Golf Corp., 639 F.2d at 1207-08 (recognizing "the importance of the bankruptcy judge's closeness to the issues raised in an application for attorneys' fees; the bankruptcy judge has not only presided over the evidentiary hearing, but also had the opportunity to observe the performance of the attorney throughout his employment in the bankruptcy court.").

According to the bankruptcy court, Walker & Patterson moved to postpone the first confirmation hearing because it was unprepared, and throughout the case it provided services that were "minimally timely to avoid dismissal of the case for delay prejudicial to creditors." Cahill, Order Allowing Fees for Debtors' Counsel at 5. Given the bankruptcy court's superior position to make this determination and because nothing in the record leads us to believe that this finding was clearly erroneous, we will not reverse it. See In re Acosta, 406 F.3d 367, 373 (5th Cir. 2005) ("If the bankruptcy court's account of the evidence is plausible in light of the record viewed as a whole, we will not reverse it.").

### III. CONCLUSION

-13-

For the foregoing reasons, we AFFIRM the judgment of the district court.