# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-20151

United States Court of Appeals
Fifth Circuit

**FILED**

November 19, 2015

Lyle W. Cayce
Clerk

FORTUNE NATURAL RESOURCES CORPORATION,

>  Appellant

v.

UNITED STATES DEPARTMENT OF INTERIOR; ATP OIL & GAS
CORPORATION,

>  Appellees

Appeal from the United States District Court
for the Southern District of Texas

Before STEWART, Chief Judge, and CLEMENT and ELROD, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Fortune Natural Resources Corporation ("Fortune") owns a percentage working interest in a lease with ATP Oil & Gas Corporation ("ATP"), who filed for bankruptcy.[1] Fortune asserted a claim in ATP's bankruptcy proceedings for decommissioning costs related to the lease. ATP sought and received approval from the bankruptcy court—over Fortune's objection—to sell certain shelf and deepwater assets. The Final Sale Order was not stayed, and the sale closed.

---

[1] Black's Law Dictionary defines working interest as "[t]he rights to the mineral interest granted by an oil-and-gas lease, so called because the lessee acquires the right to work on the leased property to search, develop, and produce oil and gas, as well as the obligation to pay all costs." (10th ed. 2014).

No. 15-20151

Fortune appealed the Final Sale Order to the district court. The district court dismissed the appeal, holding that Fortune lacked standing to appeal the bankruptcy court's ruling and that, in any event, the appeal was statutorily moot. Fortune appeals this dismissal order contending that it has standing to appeal and that the appeal is not moot. Because Fortune has failed to prove that it was directly and adversely affected pecuniarily by the ruling of the bankruptcy court, it lacks standing to appeal, and we AFFIRM.

I.

ATP, a former offshore oil and gas exploration and production operator on the Outer Continental Shelf in the Gulf of Mexico, filed for bankruptcy relief on August 17, 2012. Fortune owned a 12.5 percent working interest in a lease that was considered one of ATP's assets (the "Fortune Lease" or "Lease"). Fortune and ATP were parties to a Joint Operating Agreement, which mandated that any plugging and abandonment operations be accomplished by ATP, as operator, with the costs, risk, and net proceeds, if any, to be shared by co-lessees in proportion to their participating interests. The Fortune Lease terminated on November 11, 2010. As a result, ATP was required to conduct decommissioning operations on two wells, a platform, and a pipeline. Fortune filed its proof of claim on January 28, 2013, in the amount of $3,385,300, representing the portion of the decommissioning liability it would be forced to cover in the event that ATP did not fulfill its decommissioning obligations under the Joint Operating Agreement.

During the bankruptcy proceeding, ATP filed motions seeking bankruptcy court approval of a sale of substantially all of its assets (the "Sale").[2] The United States Department of the Interior ("Interior") objected to

---

[2] ATP, through two emergency motions, sought approval to sell its shelf assets and its deepwater assets. Because ATP did not receive any qualifying bids on its shelf assets, it

No. 15-20151

the Sale because it had not consented to it, and among other reasons, the Sale would have left ATP incapable of performing its remaining decommissioning obligations under federal law. Fortune also objected to the Sale, even though the Fortune Lease was not part of the assets of the Sale.[3] Interior withdrew its objection prior to the Sale following successful negotiations with Bennu Oil & Gas, LLC ("Bennu"), the ultimate purchaser, after Bennu agreed to fund a $44,255,000 trust ("Trust") to be administered by the Bureau of Ocean Energy Management ("BOEM"), an agency under the Interior, to address ATP's remaining decommissioning obligations. Initially, Fortune filed a limited objection and reservation of rights with respect to the shelf sale in the event that the shelf sale would not produce sufficient funds to cover the decommissioning obligations under the Fortune Lease. Subsequently, Fortune asserted an objection at the Interim Sale Hearing—after the shelf assets and deepwater assets were combined into one Sale—when it realized that BOEM planned to use the trust funds for leases where there were no co-liable parties, *i.e.*, not the Fortune Lease. Fortune argued that the proposed use of the sale proceeds was contrary to the language contained in the Interim Sale Order and proposed Final Sale Order, which Fortune believed required funding for the Fortune Lease's decommissioning costs. The bankruptcy court overruled Fortune's objection to the sale.

On October 17, 2013, the bankruptcy court entered a Final Sale Order approving the sale of ATP's assets to Bennu. The bankruptcy court's Final Sale Order was not stayed, and the Sale closed. On October 31, 2013, Fortune appealed the Final Sale Order to the district court. Interior moved to

---

cancelled the auction for the shelf assets and added the shelf assets to the sale of the deepwater assets.

[3] The bankruptcy court approved the rejection of the Fortune Lease, along with other leases, by order dated June 21, 2013.

No. 15-20151

participate as appellee, and the district court granted its motion. The district court issued an order dismissing Fortune's appeal, holding that Fortune lacked standing to appeal the bankruptcy court's ruling and that, in any event, the appeal was statutorily moot. Fortune appeals the dismissal order.

## II.

This court reviews a district court's dismissal for lack of standing de novo. *Joffroin v. Tufaro*, 606 F.3d 235, 238 (5th Cir. 2010). "[T]he putative appellant shoulders the burden of alleging facts sufficient to demonstrate that it is a proper party to appeal." *Rohm & Hass Tex., Inc. v. Ortiz Bros. Insulation, Inc.*, 32 F.3d 205, 208 (5th Cir. 1994). "In ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Id.* at 207 (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)). Furthermore, to determine whether a party has standing in bankruptcy court, courts use the "person aggrieved" test. *In re Coho Energy Inc.*, 395 F.3d 198, 202 (5th Cir. 2004). "The 'person aggrieved' test is an even more exacting standard than traditional constitutional standing." *Id.* This test "demands a higher causal nexus between act and injury; appellant must show that he was directly and adversely affected pecuniarily by the order of the bankruptcy court in order to have standing to appeal." *Id.* at 203. (internal quotation marks and citation omitted).

## III.

Fortune argues that the district court erred because Fortune was directly and adversely affected by the bankruptcy court's Final Sale Order; therefore, it has standing to appeal as a "person aggrieved." Fortune argues that the allocation of the Trust funds, as implemented, differs from the proposed allocation contemplated in the Interim Sale Order and in earlier versions of the proposed Final Sale Order. Fortune argues that prior versions covered

decommissioning obligations such as those under the Fortune Lease, while the Final Sale Order gave Interior full discretion to allocate the use of the Trust funds. Fortune points to language in prior orders indicating that the funds would be paid by the purchaser to BOEM "for the performance of decommissioning obligations under *any or all* Federal Leases that do not constitute Purchased Assets…." (emphasis added). Fortune interprets this language as requiring funding for the Fortune Lease because it was not among the Purchased Assets, and as precluding Interior from allocating funds to decommission some, but not all, of the leases. Fortune's construction ignores the plain meaning of the words "any or."[4] Such construction is unreasonable. Even if Fortune proved that prior versions of the sale order called for a different allocation of the Trust fund proceeds, it would still fail to show how the bankruptcy court's Final Sale Order directly and adversely affected it pecuniarily. If Fortune could prove that absent the Final Sale Order it would have received funds from the bankruptcy estate for its decommissioning obligations, then it would have standing to appeal the Final Sale Order because Fortune would satisfy the "person aggrieved" test. Under such a scenario, Fortune could show that the *order* of the bankruptcy court directly and adversely affected it pecuniarily. But because Fortune did not show that it would have accessed any funds from the bankruptcy estate had the court not approved the Sale, the Final Sale Order left Fortune in the same position (i.e., without any funds from ATP to assist in the decommissioning obligations for the Fortune Lease).

Fortune's argument concerning the merits—that the allocation of the sale proceeds violated substantive bankruptcy law—is unavailing because

---

[4] The word "any" is commonly understood to mean "one, no matter what one" or "one or more indiscriminately from all those of a kind." *Webster's Third New Int'l Dictionary* at 97.

Fortune must first have standing before the merits can be addressed. Additionally, Fortune's argument that it meets the "person aggrieved" standard because it has already received a letter from BOEM mandating that it decommission its Lease misses the mark. Fortune's payment of decommissioning costs may show an injury, but it does not show that the bankruptcy court's order caused this injury. This court's jurisprudence states that the *order* of the bankruptcy court must directly and adversely affect the appellant pecuniarily. *See Coho*, 395 F.3d at 203. Having failed to present sufficient evidence to show that Fortune was directly and adversely affected pecuniarily by the *order* of the bankruptcy court, Fortune does not meet the "person aggrieved" test. Therefore, the district court properly ruled that Fortune lacks standing. Because this court concludes that Fortune lacks standing to appeal, we need not address the district court's holding on statutory mootness. AFFIRMED.