**REVISED February 7, 2018**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-31151

United States Court of Appeals
Fifth Circuit

**FILED**
January 26, 2018

Lyle W. Cayce
Clerk

In the Matter of:  JFK CAPITAL HOLDINGS, L.L.C,

      Debtor

STACY CAILLOUET LEJEUNE, Succession Executrix for the Estate of
Aaron Caillouet,

      Appellant

v.

JFK CAPITAL HOLDINGS, L.L.C.; BARBARA RIVERA-FULTON, in her
Capacity as Chapter 7 Trustee of the bankruptcy Estate of John F. Kelly;
HCM FUND I, L.L.C.; JHP INVESTMENTS, L.L.C.; ISIS, L.L.C.; JEFFREY
T. SUMMERS; CHRIS ETHERIDGE,

      Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana

Before REAVLEY, SOUTHWICK, and HAYNES, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

This bankruptcy appeal presents a question of statutory interpretation
concerning "reasonable compensation" of Chapter 7 bankruptcy trustees under
11 U.S.C. §§ 326 & 330.  The bankruptcy court reduced the trustee's requested

No. 16-31151

fee. The district court vacated and remanded the bankruptcy court's order because the court failed to provide sufficient explanation for its reduction. While we reject the district court's statutory interpretation, we AFFIRM that court's decision to vacate and remand.

FACTUAL AND PROCEDURAL BACKGROUND

John F. Kelly, III allegedly operated an 80-plus entity single business enterprise to defraud his investors of millions of dollars. Kelly filed Chapter 7 bankruptcy in October 2014, and Barbara Rivera-Fulton was appointed as trustee to represent his estate ("the Kelly Trustee").

Unlike most of Kelly's business entities, JFK Capital Holdings, LLC, was solvent. JFK Capital was awaiting the receipt of a $876,000 settlement check related to a separate bankruptcy proceeding. Despite the incoming check, the law firms that negotiated the settlement on behalf of JFK Capital had not yet received their $320,000 in legal fees. The Kelly Trustee, seeking to preserve the $876,000 settlement, attempted to negotiate with the law firms, but the firms eventually filed a state-court lawsuit to secure their claim against the settlement proceeds. In response to that lawsuit, in April 2015, the Kelly Trustee filed Chapter 7 bankruptcy on behalf of JFK Capital, which resulted in an automatic stay on the state litigation. Aaron Caillouet, whose executrix is the appellant in this case, was appointed as the trustee of the JFK Capital estate ("the JFK Trustee").

The Kelly Trustee sought to consolidate the JFK Capital bankruptcy with the Kelly bankruptcy. She argued John Kelly was the alter ego of JFK Capital, JFK Capital was part of a single business enterprise with Kelly, and any JFK Capital funds would be paid to John Kelly's creditors. The JFK Trustee opposed consolidation. Recognizing that the law firms that had represented JFK Capital during the $876,000 settlement proceedings were

2

No. 16-31151

JFK Capital's only creditors, the JFK Trustee sought to prioritize the law firms' interests to the settlement proceeds. The Kelly Trustee viewed this as "an abdication of [the JFK Trustee's] fiduciary duty to Kelly's creditors" because she believed the two bankruptcies should be consolidated. Moreover, she had already expended time and resources over JFK Capital's legal issues before JFK Capital filed for bankruptcy. Both the Kelly Trustee and the JFK Trustee hired lawyers to resolve these issues.

Tensions between the parties grew. As a result, "nearly every aspect of the JFK Bankruptcy was contested." The bankruptcy court's frustrations were apparent in the hearing for the JFK Trustee's First Interim Application for Chapter 7 Trustee's Fees. There, in addition to the JFK Trustee's application for just over $15,000 in trustee fees, the JFK Trustee's lawyers sought their own fees. The Kelly Trustee objected to the reasonableness of the fees sought by the JFK Trustee's lawyers. The bankruptcy court agreed that some of the work done in the course of the proceedings was "absolutely ridiculous," basically "arguing about . . . commas and semicolons." Eventually, after questioning the JFK Trustee's lawyers about the amount of fees requested, the bankruptcy court explained: "[W]hat I'm going to do right now is I'm going to award $5,000 in fees plus costs. When [the Kelly Trustee's lawyer's] fee application comes up, I'm going to have a similar deduction on his."

The court then addressed the fee application, which had not been contested. Without any explanation, the court entered an order reducing the trustee's requested fee from $15,597.74 to $6,491.82, or from 7% to 3% of the money distributed. The JFK Trustee appealed that order to the district court.

The district court vacated and remanded the bankruptcy court's order because the order contained no explanation for reducing the JFK Trustee's fees. In doing so, the district court engaged in extensive analysis of the relevant statutory provisions for Chapter 7 trustee compensation. It directed

3

the bankruptcy court to "redetermine" fees according to the district court's order on remand. The JFK Trustee appealed.

## DISCUSSION

"This Court reviews the district court's decision 'by applying the same standard of review to the bankruptcy court's conclusions of law and findings of fact that the district court applied.'" *Baron & Newburger, P.C. v. Tex. Skyline, Ltd. (In re Woerner)*, 783 F.3d 266, 270 (5th Cir. 2015) (en banc) (quoting *In re Cahill*, 428 F.3d 536, 539 (5th Cir. 2005)). The award of fees is reviewed for abuse of discretion. *Id.* "An abuse of discretion occurs where the bankruptcy court (1) applies an improper legal standard [, reviewed *de novo*,] or follows improper procedures in calculating the fee award, or (2) rests its decision on findings of fact that are clearly erroneous." *Id.* at 270–71 (quoting *Cahill*, 428 F.3d at 539).

### I.     *Standing to Participate in the Appeal*

The JFK Trustee argues that the creditors of the Kelly Estate, who are appellees in this case, do not have standing to participate in this appeal. He refers specifically to HMC Fund I, LLC; JHP Investments, LLC; ISIS, LLC; Jeffery T. Summers; and Chris Etheridge. The JFK Trustee reasons that the Kelly bankruptcy was not substantively consolidated with the JFK Capital bankruptcy until after the bankruptcy order that gave rise to this appeal, so "the Kelly Creditors had no direct economic interest in the JFK Trustee's compensation at the time of the Order at issue."

We use the "person aggrieved" test to determine whether a party has standing to appeal an order of the bankruptcy court. *See Fortune Nat'l Res. v. U.S. Dep't of Interior*, 806 F.3d 363, 366 (5th Cir. 2015). That test requires the appellant to "show that he was directly and adversely affected pecuniarily by

the order of the bankruptcy court in order to have standing to appeal." *Id.* (quoting *In re Coho Energy Inc.*, 395 F.3d 198, 203 (5th Cir. 2004)). Here, the Kelly Estate has consistently argued entitlement to JFK Capital funds. Because the bankruptcy order concerned JFK Trustee fees that would reduce the funds available to Kelly Estate creditors, the creditors have standing.

## II.    *"Reasonable Compensation" for Chapter 7 Trustees*

The district court held that because the bankruptcy court failed to provide reasons for reducing the JFK Trustee's fee, it was unable to determine if the correct legal standard had been applied. Accordingly, the court remanded with instructions to determine a reasonable award fee in accordance with the standards expressed in its order. Both parties agree that the district court's decision to remand is proper, but dispute the legal standard required on remand.

The two statutory provisions at issue are 11 U.S.C. §§ 330 & 326. In 2005, Congress amended the two provisions as they pertain to Chapter 7 bankruptcy trustees in the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"). Since then, courts have been forced to determine the effect of the amendments in setting reasonable compensation for Chapter 7 trustees. Given the interplay between the various statutory provisions at issue, we first briefly summarize Sections 330 and 326 before evaluating the competing interpretations by the parties and other courts. We begin with the plain language of the statutes. *Waggoner v. Gonzales*, 488 F.3d 632, 636 (5th Cir. 2007). To the extent the language is "plain and unambiguous, it must be given effect." *BMC Software, Inc. v. C.I.R.*, 780 F.3d 669, 674 (5th Cir. 2015) (quoting *Kelly v. Boeing Petroleum Servs., Inc.*, 61 F.3d 350, 362 (5th Cir. 1995)).

5

No. 16-31151

Chapter 7 trustees may receive two different types of compensation under Section 330.  11 U.S.C. § 330 (2012).  First, they are awarded a fee of $60 per case under Section 330(b).  They are also awarded "reasonable compensation" for each case under Section 330(a).  At issue here is the proper interpretation of reasonable compensation under Section 330(a).

Section 330(a) governs compensation for various categories of bankruptcy court professionals, including Chapter 7 trustees.  It states that, "subject to sections 326, 328, and 329, the court may award to a trustee . . . reasonable compensation for actual, necessary services rendered by the trustee . . . and . . . reimbursement for actual, necessary expenses." § 330(a)(1).  Prior to BAPCPA, the statute provided factors for the court to consider when determining whether a Chapter 7 trustee's fee was indeed reasonable.  Section 330(a)(3) directed courts to consider all relevant factors, including time spent on services, the rates charged for the services, whether they were necessary and beneficial, whether they were performed in a reasonable amount of time, the complexity of the case, the skill of the professional, and customary compensation rates.  § 330(a)(3) (2005).

In enacting BAPCPA, however, Congress removed Chapter 7 trustees from the list of professionals subject to the Section 330(a)(3) factors. Notwithstanding the removal of Chapter 7 trustees, the Section 330(a)(3) factors still apply when determining reasonable compensation for Chapter 11 trustees and other professionals.  § 330(a)(3) (2012).

In concert with the removal of Chapter 7 trustees from Section 330(a)(3), BAPCPA introduced a new provision to Section 330 requiring courts to treat the reasonable compensation awarded to trustees as a "commission, based on Section 326."  § 330(a)(7).  Section 326, in turn, sets a cap on the maximum amount payable to trustees.  Section 326(a) provides:

6

No. 16-31151

> In a case under chapter 7 or 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3 percent of such moneys in excess of $1,000,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims.

§ 326(a).  While Sections 330(a)(7) and 326(a) apply to both Chapter 7 and Chapter 11 trustees, BAPCPA removed only Chapter 7 trustees from the list of professionals evaluated according to the Section 330(a)(3) factors.  Courts have since struggled to determine the appropriate method for determining "reasonable compensation" for Chapter 7 trustees in light of the amendments.  As one court put it: "Herein lies the rub.  What do the combined: (a) omission of chapter 7 trustees from subsection (a)(3) of Section 330; and (b) addition of subsection (a)(7) of Section 330 accomplish?"  *In re Coyote Ranch Contractors, LLC*, 400 B.R. 84, 92 (Bankr. N.D. Tex. 2009).

Two approaches for determining the appropriate "commission" for Chapter 7 trustees have emerged in recent years.  Under the first approach, some courts hold that Section 326(a) is not simply a maximum but also a presumptively reasonable fixed commission rate to be reduced only in rare instances.  *See, e.g.*, *Mohns, Inc. v. Lanser*, 522 B.R. 594, 601 (E.D. Wis.), *aff'd sub nom. In re Wilson*, 796 F.3d 818 (7th Cir. 2015).  Other courts hold that the presumptively reasonable approach is nonetheless subject to adjustment in "extraordinary circumstances."  *See, e.g.*, *In re Salgado-Nava*, 473 B.R. 911, 921 (B.A.P. 9th Cir. 2012).  Some courts similarly presume that the Section 326(a) percentages are reasonable, but perform a more in-depth review of the

7

trustee's services to ensure the presumption is justified. *See, e.g.*, *In re Scroggins*, 517 B.R. 206, 214 (Bankr. E.D. Cal. 2014).

The second approach, adopted and articulated by the district court here, declines to presume Section 326(a) percentages as reasonable because the "bankruptcy court has discretion to award reasonable compensation *only* for actual and necessary services, and may award an amount less than that requested by the trustee." At least two courts in our circuit have endorsed this approach in determining Chapter 7 trustee awards. *See In re King*, 559 B.R. 158, 163 (Bankr. S.D. Tex. 2016); *Coyote Ranch*, 400 B.R. at 94. According to those courts, the Chapter 7 trustee fee analysis "may start and end with the [Section 326(a)] cap," *Coyote Ranch*, 400 B.R. at 94, but Section 330(a)(7) does not "confer an absolute right of a trustee to be paid the maximum amount allowed under § 326(a)." *King*, 559 B.R. at 163. In light of the other applicable Section 330(a) provisions, "the court can and should consider all surrounding facts and circumstances in deciding whether to award something less than the Section 326 commission," and that consideration "*may* include" the Section 330(a)(3) factors. *Coyote Ranch*, 400 B.R. at 95; *see King*, 559 B.R. at 163–64.

Today, however, we adopt an interpretation aligned with the first approach, that the percentage amounts listed in Section 326 are presumptively reasonable for Chapter 7 trustee awards. In particular, we find the reasoning of the court in *Mohns* persuasive in addressing the statutory provisions at issue. In *Mohns*, the court evaluated the same approach adopted by the district court here, "that the trustee is not presumptively entitled to the maximum allowable commission and to require the bankruptcy court to determine the commission by 'grading' the trustee's performance." 522 B.R. at 598. Such an approach, according to *Mohns*, fails to account for the removal of Chapter 7 trustees from the reasonableness criteria provided in Section 330(a)(3). *Id.* at 599. "In removing Chapter 7 trustees from § 330(a)(3) and directing courts to

treat the trustee's compensation as a commission, Congress made clear that a trustee's compensation should be determined on the basis of a percentage, rather than on a factor-based assessment of the trustee's services[.]"  *Id.* Congress first directs courts to utilize a commission-based approach, then directs courts to base the compensation on the percentages listed in Section 326. *See id.*  Accordingly, Section 330(a)(7) "is best understood as a directive to simply apply the formula of § 326 in every case."  *Id.*

Here, the district court concluded that while Congress designated Chapter 7 trustee compensation as a "commission," the amendments did not alter the role of Section 326 as a mere compensation ceiling, nor did they alter the bankruptcy court's "broad discretion" to determine what is "reasonable." In adopting the opposing approach, our interpretation is guided by the nature of a commission-based award as amended in BAPCPA contrary to a compensation-based award pre-BAPCPA.

At the time BAPCPA was passed, "commission" was defined as a "fee paid to an agent or employee for a particular transaction, [usually] as a percentage of the money received from the transaction[.]"  BLACK'S LAW DICTIONARY (8th ed. 2004).  As noted in *Mohns*, commission percentages "are usually agreed to at the beginning of an engagement, before the actual amount of time spent on the matter could even be known."  522 B.R. 602. Compensation, on the other hand, is defined as "'[r]emuneration and other benefits received in return for services rendered[.]"  BLACK'S LAW DICTIONARY. While compensation denotes a proportionality or connection between benefits received and services rendered, the shift to a commission-based approach signals congressional intent to award fees based on percentage.  The district court's approach here would essentially apply the same working definition to commission as applied to compensation pre-BAPCPA, giving little practical effect to the amended language.  We agree with the court in *Mohns* that "[i]n

No. 16-31151

removing Chapter 7 trustees from § 330(a)(3) and directing courts to treat the trustee's compensation as a commission, Congress made clear that a trustee's compensation should be determined on a basis of a percentage, rather than on a factor-based assessment of the trustee's services[.]" 522 B.R. at 599.

The Kelly creditors argue that additional provisions of Section 330 permit broad discretion in determining Chapter 7 trustee compensation. Even if Section 330(a)(7) now designates trustee awards as a commission, they posit that additional requirements placed on trustee awards, in effect, still require the same type of reasonableness analysis facilitated by Section 330(a)(3) pre-BAPCPA. The district court agreed, providing the following list of remaining provisions requiring such an approach: "330(a)(1) instructs courts to award fees for 'actual' and 'necessary' services; 330(a)(4) prohibits fees for duplicative and unnecessary services; and 330(a)(2) grants the Court wide discretion to award less than a trustee's requests." These provisions nonetheless fail to support the district court's conclusion and the Kelly creditors' interpretation.

Our interpretation of the remaining provisions listed by the district court is guided by their application in Section 330, not only to Chapter 7 trustees but to all bankruptcy professionals governed by the statute. This includes professionals paid on an hourly or per-transaction basis. *See* § 330(a)(1); *Mohns*, 522 B.R. at 600. Concerning the actual and necessary services limitation of Section 330(a)(1) and the duplicative services limitation of Section 330(a)(4), these provisions serve the continuing purpose of limiting the compensation of non-Chapter 7 bankruptcy court officers. Indeed, the provisions are fulfilled for Chapter 7 trustees under a commission-based award because "the commission-based nature of the trustee's fee by itself prevents the court from awarding compensation to a Chapter 7 trustee for duplicative and unnecessary services." *Mohns*, 522 B.R. at 600. The trustee receives the same level of compensation based on the Section 326 amounts regardless of the time

10

spent on the case. *See id.* Consistency between a commission-based approach and the limitations of Sections 330(a)(1) and (a)(4) are inherent to the statutory framework.

To conclude that Sections 330(a)(1), (a)(2), and (a)(4) maintain a de facto reasonableness inquiry post-BAPCPA is to disregard the operative language of the statute. Indeed, habitual judicial review of the statutory commission for reasonableness would run counter to BAPCPA's statutory scheme in which bankruptcy professionals cannot be compensated for time spent litigating their fees. *See Baker Botts L.L.P. v. ASARCO LLC*, 135 S. Ct. 2158, 2168 (2015) (There was no basis in BAPCPA "to support a deviation from the American Rule" of each party's paying its own attorney's fees). While the district court states its holding is true to the plain language of the statute, we hold that a plain reading of "commission" is inconsistent with the broad discretion approach now advocated by the Kelly creditors.

While compensation for Chapter 7 trustees must be "reasonable," the district court's approach fails to articulate what sort of factors the bankruptcy court should utilize when exercising its "broad discretion." Indeed, the sort of reasonableness analysis required would tend to mirror the Section 330(a)(3) factors. Congress, though, explicitly rejected application of Section 330(a)(3) to Chapter 7 trustees. Indeed, BAPCPA coupled Chapter 7 trustee removal from Section 330(a)(3) with the designation of compensation as a "commission." § 330(a)(7).

We pause to recall that the added language of Section 330(a)(7) requires the trustee's commission to be "based on Section 326." Because Section 326 uses the language "not to exceed" when listing the maximum percentages to be awarded, the district court concluded that Section 330(a)(7) is not signaling a standard commission rate to be applied in every case but rather a maximum which the court may not exceed. This interpretation of "based on" renders the

11

language superfluous, however, because Section 330(a)(1) already requires awards to be "subject to Section 326[.]"  Because a different word is used in each provision, we assume that different meanings were intended.  *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 711 n.9 (2004).  The proper interpretation of "based on" in Section 330(a)(7) therefore treats the commission as a fixed percentage, using Section 326 not only as a maximum but as a baseline presumption for reasonableness in each case.

The Kelly creditors rely on one of our pre-BAPCPA cases for the proposition that "Section 326(a)'s intended role within the Bankruptcy Code is simply to set a maximum limit on the Trustee's compensation."  *Pritchard v. U.S. Tr. (In re England)*, 153 F.3d 232, 236 (5th Cir. 1998).  In *Pritchard*, however, we noted that "§ 330, not § 326(a), provides authorization for compensating the trustee and sets the standards for that compensation[.]"  *Id.* While the pre-BAPCPA version of Section 330 allowed for trustee compensation based on reasonableness factors, BAPCPA amended that which controls application of Section 326.  Accordingly, the Kelly creditor's argument that Section 326 should provide the requisite authorization for applying a reasonableness standard fails.

In the alternative, the Kelly creditors ask us to adopt the approach of some courts in leaving open the possibility of a reduced commission based on "extraordinary circumstances."  *See In re Rowe*, 750 F.3d 392, 397 (4th Cir. 2014); *Salgado-Nava*, 473 B.R. at 911.  To the extent extraordinary circumstances explicitly trigger the remaining provisions of Section 330, we agree such a circumstance might preclude a commission award.  To the extent an extraordinary circumstances analysis evaluates the types of reasonableness factors articulated in Section 330(a)(3), such an approach suffers the same flaw as the district court's approach here.  There is little distinction between the departure    from    a    commission-based    approach    under    extraordinary

circumstances versus the pre-BAPCPA reasonableness inquiry. *See, e.g.*, *Rowe*, 750 F.3d at 397 (holding that extraordinary circumstances are present when the trustee's administration falls below "acceptable standards").

While we recognize that Section 330 still allows a reduction or denial of compensation, this should be a rare event. We acknowledge that exceptional circumstances can alter the compensation, but "exceptional" is the key. The commission-based framework established by Congress facilitates more efficient Chapter 7 trustee compensation in the courts by placing the burden on the trustees to avoid wasting resources, as their commission remains the same regardless of potentially duplicative or unnecessary services.

We AFFIRM the district court's order vacating the bankruptcy court order and REMAND for redetermination of an award consistent with the standards expressed in this opinion.