# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 28, 2023

Lyle W. Cayce
Clerk

No. 22-50453

---

In the Matter of Salubrio, L.L.C.

*Debtor*,

Douglas K. Smith, MD,

*Appellant*,

*versus*

Eric Terry, Chapter 7 Trustee,

*Appellee*,

---

In the Matter of Salubrio, L.L.C.

*Debtor*,

Douglas K. Smith

*Appellant*,

*versus*

Eric Terry, Trustee

*Appellee*,

---

No. 22-50453

IN THE MATTER OF SALUBRIO, L.L.C.

*Debtor,*

DOUGLAS K. SMITH, MD, CREDITOR

*Appellant,*

*versus*

ERIC TERRY, TRUSTEE

*Appellee.*

---

Appeal from the United States District Court
for the Western District of Texas
USDC Nos. 5:20-CV-1194; 5:20-CV-1435; 5:20-CV-1450

---

Before CLEMENT, OLDHAM, and WILSON, *Circuit Judges.*

PER CURIAM:*

This is a bankruptcy appeal. Appellant Dr. Douglas Smith challenges three orders of the bankruptcy court: (1) an order to compel, (2) the denial of Smith's motion to strike, and (3) the denial of Smith's motion for reconsideration. We affirm.

**I.**

Smith is an interested party in the Chapter 7 bankruptcy of Salubrio, LLC. Smith is the sole member of Salubrio and controls other related entities, including Musculoskeletal Imaging Consultants, LLC ("MSKIC"). Salubrio operates under the trade name Brio San Antonio MRI. Together

---

* This opinion is not designated for publication. See 5TH CIR. R. 47.5.

with MSKIC and the other entities, Salubrio provides MRI services. Smith's entities use several data platforms (the "IT platforms") to manage their business activities, including a "common web-based accounting platform" called "Intacct," which is licensed through MSKIC. The Intacct platform contains data, including patient medical records and accounts receivable, pertinent to Salubrio's bankruptcy.

In March 2020, Salubrio filed a voluntary petition for relief under Chapter 11, Subchapter V, of the Bankruptcy Code. The bankruptcy court appointed Eric Terry as Trustee, and Salubrio operated its business as debtor-in-possession until June 2020. That June, the bankruptcy court ordered the removal of Salubrio as debtor-in-possession on the motion of a creditor who alleged that Smith had defrauded the creditor through Salubrio and grossly mismanaged Salubrio. In July 2020, the bankruptcy court held a hearing on three pending motions ("the July Hearing"); the outcome of that hearing is irrelevant, but the Trustee's statements during the July Hearing are relevant to Smith's estoppel argument, discussed below. In September 2020, a different creditor moved to convert the case to a Chapter 7 bankruptcy. The bankruptcy court granted the motion.

On September 25, 2020, the Trustee filed a "Motion to (I) Compel and (II) Authorize Third Parties to Provide Trustee With Administrator Level Access to Data Platforms" (the "Motion to Compel"). The Trustee sought to compel Smith to provide the Trustee with access and control of the IT platforms, including Intacct, that contained data relevant to Salubrio's bankruptcy. After a hearing, the bankruptcy court entered an order granting the motion ("the Order to Compel"). Smith appealed the Order to Compel to the district court, arguing, for the first time, that the court's ruling deprived him of his personal property rights in medical records and, by extension, the accounts receivable.

Pursuant to FED. R. BANKR. P. 8009(a)(1), Smith filed a designation of items to be included in the record on appeal. Smith included the transcript from the July Hearing, asserting that the Trustee stated at that hearing that any medical records were Smith's property. The Trustee moved to strike the transcript, Smith failed to oppose, and the bankruptcy court granted the motion. Smith then filed a motion for reconsideration, which was denied. Smith appealed both of those orders to the district court; those appeals were consolidated with Smith's appeal of the Order to Compel.

The district court affirmed across the board. Smith characterized the primary issue before the district court as "whether the bankruptcy court had the authority to assign title to property that belongs to the non-debtor healthcare provider." He asserted that the Order to Compel divested him of his personal property rights in the accounts receivable and medical records, which in turn violated medical privacy laws and nondisclosure obligations. The district court found that Smith had failed to raise that argument before the bankruptcy court and considered it forfeited as a result. Additionally, the court credited Smith's representation during the hearing on the Motion to Compel that MSKIC was the owner of the IT platforms. And the court found that the Order to Compel did not transfer any property as it only required Smith, through MSKIC, to provide access and control of the IT platforms to the Trustee. Therefore, the court concluded that Smith lacked standing to appeal the Order to Compel.

The district court also affirmed the bankruptcy court's order granting the Trustee's motion to strike. Smith argued that the Trustee admitted during the July Hearing that generally, the physician is the owner of patient records under Texas law. Therefore, urged Smith, the transcript of the July Hearing was relevant to the issue that he had appealed. The district court rejected Smith's interpretation of the transcript, finding that the Trustee did

No. 22-50453

not concede that Smith owned the records. In effect, then, the district court determined that the July Hearing transcript was irrelevant.

Finally, the district court affirmed the bankruptcy court's denial of Smith's motion for reconsideration. The court held that Smith did not explain his failure to oppose the motion to strike and did not show a manifest error of law or fact in the bankruptcy court's order granting that motion.

Smith timely appealed to this court.

## II.

We apply the same standard of review as did the district court. *In re Age Refin., Inc.*, 801 F.3d 530, 538 (5th Cir. 2015) (citation omitted). "Our review is properly focused on the actions of the bankruptcy court." *Id.* (citation omitted). We review that court's findings of fact for clear error and its conclusions of law de novo. *Id.* (citation omitted).

We begin—and end—by addressing Smith's standing to appeal the Order to Compel. *See In re United Operating, LLC*, 540 F.3d 351, 354 (5th Cir. 2008) ("Standing is a jurisdictional requirement, and we are obliged to ensure it is satisfied[.]"). We conclude he lacks it. Standing is particularly important in bankruptcy cases because of the numerous interested parties. *See Matter of Technicool Sys., Inc.*, 896 F.3d 382, 385 (5th Cir. 2018). "The narrow inquiry for bankruptcy standing—known as the person aggrieved test—is more exacting than the test for Article III standing." *Id.* (citation and quotation marks omitted). To satisfy this test, an appellant must "show that he was 'directly and adversely affected pecuniarily by the order of the bankruptcy court.'" *Id.* (quoting *Fortune Nat. Res. Corp. v. U.S. Dep't of Interior*, 806 F.3d 363, 366 (5th Cir. 2015). "This restriction narrows the playing field, ensuring that only those with a direct, financial stake in a given order can appeal it." *Id.* at 386.

No. 22-50453

Smith lacks standing to appeal the Order to Compel because that order did not transfer any ownership interest in Smith's personal property, i.e., Smith was not "directly and adversely affected pecuniarily" by the order. *Id.* at 385. And because his appeals of the order granting the Trustee's motion to strike and the order denying Smith's motion for reconsideration are derivative of his appeal of the Order to Compel, those challenges are mooted by his lack of standing. *See Louisiana v. Wells*, 628 F. App'x 260, 261 (5th Cir. 2015) (denying as moot a motion to strike portions of the record on appeal).

Smith contends that the Order to Compel required him to transfer ownership of medical records and accounts receivable to the Trustee. But assuming *arguendo* that Smith has a property interest in the medical records and accounts receivable, the Order to Compel did not transfer ownership of that property.

The Order to Compel consists in substance of two clauses separated by a semicolon:

> Dr. Smith, in his individual capacity and/or his capacity as the principal of MSKIC and [another related entity] is hereby compelled to either assign the Intacct account from MSKIC to Salubrio, or provide his consent . . . for the Trustee . . . to be the licensed user upon renewal with [administrative level access and control] over the Intacct account; and . . . to either assign additional accounts as designated by the Trustee, or provide his consent to the third parties maintaining such accounts to provide [administrative level access and control] to the Trustee for such accounts.

The first clause is limited in scope to the Intacct account. Smith, both during the hearing on the Motion to Compel and in briefing before this court, stated that the Intacct account was the property of MSKIC. As Smith appeals in his

6

No. 22-50453

personal capacity, he does not have standing to contest an order directed to MSKIC.

The second clause of the Order to Compel does not define the "additional accounts" that are referenced. Smith seizes on this purported ambiguity, arguing that the Order to Compel required him to transfer ownership of "accounts," including accounts receivable, IT platform accounts, and medical records. But that interpretation strains the language of the order and makes little sense in context. First, the Motion to Compel only sought access and control of the IT platforms. Second, at no point during the hearing on the Motion to Compel did Smith, or anyone else, suggest that the motion sought to transfer actual accounts receivable to the Trustee. Rather, the point of contention during the hearing was how to give the Trustee administrative access to the IT platforms so that the Trustee could retrieve data pertinent to Salubrio's bankruptcy. Third, Smith has continued to press his claim to the accounts receivable in the bankruptcy court, *see In re Smith*, No. 21-CV-1135-XR, 2022 WL 16825195 (W.D. Tex. Nov. 2, 2022), indicating that he has not treated the Order to Compel as dispositive on the issue of who owns the accounts receivable.

Given the language of the Order to Compel and its context, it is clear that the order did not transfer ownership of the medical records or accounts receivable (whoever owns them). Rather, the order compelled Smith, both individually and as principal of MSKIC and the other entities, to grant the Trustee access and control of the IT platforms to enable the Trustee to access information, including medical records and accounts receivable, related to Salubrio's assets and liabilities. Smith has not shown that compelling him to grant such access caused him a "direct, adverse, pecuniary hit." *Matter of Technicool Sys., Inc.*, 896 F.3d at 386 ("The order must burden his pocket

7

No. 22-50453

before he burdens a docket."). As a result, he lacks standing to challenge the Order to Compel, and we affirm the district court's conclusion to that effect.[†]

And as noted above, Smith's appeals of the district court's denials of his motion to strike and motion for reconsideration are moot because they spring from the same record on appeal related to the Order to Compel. *See Wells*, 628 F. App'x at 261. The orders of the bankruptcy court are accordingly

AFFIRMED.

---

[†] Smith also argues that granting the Trustee access and control of the medical records violates numerous state and federal confidentiality requirements. But as noted, he fails to show how giving the Trustee access to patient medical records affects him pecuniarily. In any event, Smith also represented at the hearing on the Motion to Compel that he "want[ed] . . . the Trustee to have access to all the data."

No. 22-50453

ANDREW S. OLDHAM, *Circuit Judge*, dubitante:

My esteemed colleagues dismiss this appeal after applying the "person aggrieved test." *Ante*, at 5. That test requires an appellant to "show that he was directly and adversely affected pecuniarily by the order of the bankruptcy court." *Fortune Nat. Res. Corp. v. U.S. Dep't of Interior*, 806 F.3d 363, 366 (5th Cir. 2015). The "person aggrieved" requirement originated in a since-repealed statute and persists today as judge-made, prudential standing doctrine. *See In re Coho Energy, Inc.*, 395 F.3d 198, 202–03 (5th Cir. 2004) (describing the history of the test and adopting it in this circuit).

I have no dispute with my respected colleagues' reasoning, at least as a matter of circuit precedent. But I do wonder if our reliance on prudential standing doctrines nears obsolescence.

"[T]he standing doctrine, at least as presently conceived" does not "run deep in our history." RICHARD H. FALLON, JR., JOHN F. MANNING, DANIEL J. MELTZER & DAVID L. SHAPIRO, HART & WECHSLER'S THE FEDERAL COURTS AND THE FEDERAL SYSTEM 101 (7th ed. 2015); *accord TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2219 (2021) (Thomas, J., dissenting). And whatever the provenance of *constitutional* standing doctrines, *prudential* standing's (ahem) standing is far shakier.

As their nameplate suggests, prudential doctrines implicate judicial discretion to avoid cases over which we have jurisdiction. Such discretion is tough to square with the general rule that federal courts "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Cohens v. State of Virginia*, 19 U.S. (6 Wheat.) 264, 404 (1821).

That's true even if we'd rather not touch a case. *Ibid.* ("We cannot pass it by because it is doubtful.").*

And the Supreme Court has suggested that prudential standing could be on its last leg. In *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), the Court noted "tension" between "prudential" doctrines and federal courts' "virtually unflagging" "obligation to hear and decide cases." *Id.* at 125–26 (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013)). The unanimous Court then narrowly construed the "zone of interests" test as a test of statutory interpretation, not judicial prudence. *Id.* at 129. It also described, at least on the facts of that case, prudential standing as a "misnomer." *Id.* at 127. Shortly thereafter, the Court in *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014), suggested without firmly deciding that a court of appeals' reliance on prudential ripeness concerns was misplaced. *See id.* at 167 ("[W]e need not resolve the continuing vitality of the prudential ripeness doctrine in this case."). And in *Bank of America Corp. v. City of Miami*, 581 U.S. 189 (2017), the Court appeared to equate "prudential" and "statutory" standing, as if the former adds nothing to the latter. *Id.* at 196.

After *Lexmark*, I harbor doubt as to the validity of prudential standing doctrines like the person aggrieved test. That doubt is particularly acute where, as here, the doctrine originated in a statutory requirement that Congress has since repealed and that exists today only because judges revivified it as a matter of federal common law. *See Coho*, 395 F.3d at 202 (describing the removal of the person aggrieved test by the Bankruptcy Reform Act of 1978).

---

* As with all general rules, of course, this one has exceptions. *See, e.g.*, *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 501–02 (1941).

Several of our sister circuits have either questioned the continuing viability of this doctrine, or narrowed it, in the wake of *Lexmark*. *See In re Schubert*, No. 21-3969, 2023 WL 2663257, at *3 & n.2 (6th Cir. 2023) (Thapar, J.) (suggesting the "person aggrieved" test may no longer be good law); *Matter of Petrone*, 754 F. App'x 590, 591 (9th Cir. 2019) (mem.) (recasting the "person aggrieved" test as a flavor of *Lexmark's* zone-of-interest test); *In re Ernie Haire Ford, Inc.*, 764 F.3d 1321, 1325 n.3 (11th Cir. 2014) (deciding that after *Lexmark*, the person-aggrieved test does not speak to subject-matter jurisdiction). Other circuits have noted possible reverberations from *Lexmark* but declined to measure them. *See In re GT Automation Group, Inc.*, 828 F.3d 602, 605 n.1 (7th Cir. 2016) (raising, but sidestepping, the question of whether prudential bankruptcy rules survive *Lexmark*); *In re Kaiser Gypsum Company, Inc.*, 60 F.4th 73, 83–84 (4th Cir. 2023) (resolving a party's *Lexmark*-based challenge to the person-aggrieved test on different grounds).

All that said, our precedent is what it is. And I do not question my esteemed colleagues' application of it.